UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BONNIE VENT, d/b/a GENESIS CREATIONS, )
                                       )
                            Plaintiff, )  Civil Action No. 7:08-cv-02538-SCR
                                       )
                    v.                 )  (ECF)
                                       )
MARS SNACKFOOD US, LLC, and            )  ORAL ARGUMENT REQUESTED
MARS, INCORPORATED,                    )
                                       )
                           Defendants. )

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**


                              Respectfully submitted,

                              WILLIAMS & CONNOLLY LLP


                              _____/s/_____
                              Katherine G. Lindsey (KL-0902)
                              R. Hackney Wiegmann

                              *Of Counsel*
                              Kenneth J. Brown

                              725 Twelfth Street, N.W.
                              Washington, D.C.  20005
                              (202) 434-5000
                              (202) 434-5029 (facsimile)

                              *Attorneys for Defendants*

Dated:  April 14, 2008

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

BACKGROUND ...................................................................................................................... 1

ARGUMENT ............................................................................................................................ 3

I.      NEW JERSEY LAW GOVERNS PLAINTIFF'S CLAIMS. ........................................... 3

II.     PLAINTIFF CANNOT STATE A CLAIM FOR BREACH OF AN
        IMPLIED-IN-FACT CONTRACT ................................................................................. 4

        A.      Motion to Dismiss Standard ................................................................................ 4

        B.      Plaintiff Cannot Allege the Elements of An Implied-In-Fact Contract ................ 5

                1.      Plaintiff's Allegations Demonstrate No Mutual Assent. ............................ 5

                2.      Plaintiff Cannot Allege Consideration ....................................................... 7

III.    PLAINTIFF CANNOT STATE A CLAIM FOR UNJUST ENRICHMENT .................. 12

CONCLUSION ......................................................................................................................... 15

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

*ABD Monroe, Inc. v. Monroe Tp.*, No. 04-1412 (WHW), 2008 WL 58876
   (D.N.J. Jan. 3, 2008) ......................................................15

*Am. Greetings Corp. v. Easter Unlimited, Inc.,* 579 F. Supp. 607 (S.D.N.Y. 1983)....................10

*Armotek Indus., Inc. v. Employers Ins. of Wausau*, 952 F.2d 756 (3d Cir. 1991) ..........................3

*B & G Crane Serv., Inc. v. Dolphin Titan Int'l, Inc.*, 762 F.2d 1292 (5th Cir. 1985) ..................14

*Baer v. Chase*, 392 F.3d 609 (3d Cir. 2004) ......................................................5, 6, 7, 8

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ................................................1, 4, 5, 8, 14

*Bergin v. Century 21 Real Estate Corp.*, No. 98 Civ. 8075(JGK), 2000 WL 223833
   (S.D.N.Y. Feb. 25, 2000) ..............................................7, 12, 13, 14

*Berrian v. Pataki*, 510 F. Supp. 2d 348 (S.D.N.Y. 2007).................................................5, 8, 14

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
   448 F.3d 573 (2d Cir. 2006).................................................3

*Carruthers v. Flaum*, 388 F. Supp. 2d 360 (S.D.N.Y. 2005).........................................3

*Chong v. Healthtronics, Inc.*, No. CV-06-1287 (SJF) (MLO), 2007 WL 1836831
   (E.D.N.Y. June 20, 2007) ..............................................4

*Duffy v. Charles Schwab & Co., Inc.*, 123 F. Supp. 2d 802 (D.N.J. 2000) ..............4, 5, 7, 8, 9, 14

*Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498 (2d Cir. 1982).......................................10

*Fausto v. Diamond*, 589 F. Supp. 451 (D.R.I. 1984)....................................................10

*Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386 (2d Cir. 2001) ................................................3

*Haskell v. Lever Bros. Co.*, 243 F. Supp. 601 (S.D.N.Y. 1965) ......................................13

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) ..................................................4

*Joest Vibratech, Inc. v. N. Star Steel Co.*, 109 F. Supp. 2d 746 (N.D. Ohio 2000)......................14

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)..............................................3

*Leeds v. Meltz*, 85 F.3d 51 (2d Cir. 1996)....................................................................5

*MBL Contracting Corp. v. King World Prods., Inc.*, 98 F. Supp. 2d 492 (S.D.N.Y. 2000)..........13

*Nadel v. Play by Play Toys & Novelties, Inc.*, 208 F.3d 368 (2d Cir. 2000) ................4, 5, 7, 8, 12

*Radio Today, Inc. v. Westwood One, Inc.*, 684 F. Supp. 68 (S.D.N.Y. 1988) ............................14

*S. Jersey Hosp., Inc. v. Corr. Med. Servs.*, No. 02-2619 (JBS), 2005 WL 1410860
    (D.N.J. June 15, 2005) ........................................................................................6

*Ty, Inc. v. GMA Accessories, Inc.*, 959 F. Supp. 936 (N.D. Ill. 1997)...........................................10

*United States v. Ricciardi*, 357 F.2d 91 (2d Cir. 1966) ................................................................10

*Zikakis v. Staubach Retail Servs., Inc.*, No. 04-Civ.-9609(NRB), 2005 WL 2347852
    (S.D.N.Y. Sept. 26, 2005) ................................................................................8

## STATE CASES

*Cohn v. Fisher*, 287 A.2d 222 (N.J. Super. Ct. Law Div. 1972) ....................................................5

*Flemming v. Ronson Corp.*, 258 A.2d 153 (N.J. Super Ct. Law Div. 1969) ................6, 12, 13, 14

*Jennings v. Camp*, 13 Johns. 94 (N.Y. 1816) ................................................................................6

*Johnson v. Benjamin Moore & Co.*, 788 A.2d 906 (N.J. Super. Ct. App. Div. 2002).......4, 8, 9, 15

*Martin H. Bauman Assocs., Inc. v. H & M Int'l Transport, Inc.*, 171 A.D.2d 479
    (1st Dep't 1991) ..............................................................................................13

*Oasis Music, Inc. v. 900 U.S.A., Inc.*, 161 Misc. 2d 627 (N.Y. Sup. Ct. 1994)..............................8

*Saint Barnabas Med. Ctr. v. Essex County*, 543 A.2d 34 (N.J. 1988)............................................5

*Stephen Pevner, Inc. v. Ensler*, 309 A.D.2d 722 (1st Dep't 2003)................................................13

*VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519 (N.J. 1994) ..................................................12, 13

*Weichert Co. Realtors v. Ryan*, 608 A.2d 280 (N.J. 1992)..............................................................6

*W. Caldwell v. Caldwell*, 138 A.2d 402 (N.J. 1958)......................................................................6

## FEDERAL STATUTES

Fed. R. Civ. P. 12(b)(6)................................................................................................15

Fed. R. Evid. 201(b)...................................................................................................10

## SECONDARY LEGAL

Restatement (Second) Conflict of Laws § 188, cmt. c (1971) .......................................4

Restatement (Second) Conflict of Laws § 188, cmt. e  (1971).......................................4

Restatement (Second) Contracts § 53(2) (1981)...........................................................6

## MISCELLANEOUS

Addams Family Episode Guide, *available at* http://epguides.com/AddamsFamily/
    (last visited April 8, 2008) ...............................................................................11

The Addams Family Theme Lyrics, *available at*
    http://www.lyricsondemand.com/tvthemes/theaddamsfamilylyrics.html (last
    visited April 8, 2008) .......................................................................................11

Amazon.com Listing for "The Complete Halloween Party Album," *available at*
    http://www.amazon.co.uk/Complete-Halloween-Party-
    Album/dp/B000VJVSQA/ref=pd_sim_m_h__img_8 (last visited April 8, 2008)...........11

Amazon.com Listing for "Halloween Hits," *available at*
    http://www.amazon.co.uk/Halloween-Hits-Various/dp/B0000032GJ
    (last visited April 8, 2008) ...............................................................................12

Amazon.com Listing for "Halloween Howls," *available at*
    http://www.amazon.co.uk/Halloween-Howls-Andrew-
    Gold/dp/B0000033VI/ref=pd_sim_m_h__img_4 (last visited April 8, 2008) .................12

Amazon.com Listing for "These Ghoulish Things:  Horror Hits for Halloween,"
    *available at* http://www.amazon.co.uk/These-Ghoulish-Things-Horror-
    Halloween/dp/B000A8SXN8/ref=pd_sim_m_h__title_1 (last visited April 8,
    2008) ...............................................................................................................12

Amazon.com Listing for "The Ultimate Halloween Party Album," *available at*
    http://www.amazon.co.uk/Ultimate-Halloween-Party-
    Album/dp/B000HT36DC/ref=pd_sim_m_h__img_7 (last visited April 8, 2008) ...........12

Amazon.com Review of "Addams Family DVD – Volume One," *available at*
    http://www.amazon.com/Addams-Family-One-Arthur-Lubin/dp/B000HEZEYG
    (last visited April 8, 2008) ...........................................................................10, 11

Rhapsody.com Listing for "Kidz Bop Halloween – 'The Addams Family,'" *available at*
http://www.rhapsody.com/kidzbopkids/kidzbophalloween/theaddamsfamily (last
visited April 8, 2008) ....................................................................................................12

Plaintiff Bonnie Vent, a "freelance entertainment broker" who represents actors from the 1960s television show *The Addams Family*, claims she proposed the "novel" idea that Defendants Mars, Incorporated ("Mars") and Mars Snackfood US, LLC ("Mars Snackfood") undertake a Halloween promotion involving *The Addams Family*. *See* Compl. ¶¶ 4, 18-19. She claims the parties had an implied-in-fact contract to compensate her for this idea, and that Mars was unjustly enriched by its alleged use of the idea. Plaintiff's complaint, however, belies these allegations. Plaintiff alleges she contacted Mars solely to solicit work for her *Addams Family* clients, and Mars expressly declined her offer. Compl. ¶¶ 10-12, 17-19, 25. She does not (and cannot) claim to have suggested the advertisements that Mars did air, which did not involve her clients, but instead featured M&M's® dressed as *Addams Family* characters, set to the show's theme song. *Id.* ¶ 28. Indeed, Plaintiff concedes that she lacks any legal rights to the *Addams Family* characters or theme song, and that Mars paid a substantial fee to license those rights from the Tee and Charles Addams Foundation. *Id.* ¶¶ 14, 15, 30. These concessions doom her claims.

Furthermore, even had Plaintiff suggested a promotion not involving her clients, her alleged idea is far from novel – proposing an *Addams Family*-themed Halloween promotion is like suggesting a Christmas promotion involving reindeer on the roof or an Easter promotion featuring a certain bunny. For this reason as well, Plaintiff's claims should be dismissed.

## BACKGROUND

As a freelance entertainment broker, Plaintiff "represent[s] and promot[es] various individuals . . . on a project-by-project basis." Compl. ¶ 4.[1] Her clients include actors Lisa Loring, Ken Weatherwax, and Felix Silla, each of whom appeared on the 1960s television show *The Addams Family*. *Id.* ¶ 5. On August 1, 2006, these clients contracted with Twentieth

---

[1] As required, Defendants assume the truth of Plaintiff's factual allegations for purposes of this motion to dismiss. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).

Century Fox Home Entertainment, LLC ("Twentieth Century") to promote sales of "*The Addams Family* DVD Volume 1." *Id.* ¶¶ 10-12, 17.  Later that month, Plaintiff – who was assisting Loring, Weatherwax, and Silla in these promotional efforts, *id.* ¶ 12 – contacted Claire O'Donnell, "a Senior Marketing Buyer" for Mars.[2]  *Id.* ¶ 18.  Plaintiff claims she pitched to Ms. O'Donnell "a specific, novel, and concrete idea for a cross-promotion between Addams Family characters and M&M's® candies for Halloween."  *Id.*  The complaint does not elaborate on the purported proposal, other than to allege that "Plaintiff also conveyed to Ms. O'Donnell that she would offer her *Addams Family* clients . . . to help with this cross-promotion."  *Id.* ¶ 19 (italics added).  Plaintiff does not claim Mars accepted her offer of her clients' services.  To the contrary, Ms. O'Donnell expressly "conveyed to Plaintiff that Defendants . . . had declined to use her idea . . . ."  *Id.* ¶ 25.  Nor does Plaintiff claim to have proposed the advertisements Mars did pursue, which "featured M&M's® chocolate candies transmogrified to resemble the cast of the classic television program, *The Addams Family*, and featured *The Addams Family* theme song, complete with finger snaps."  Compl. ¶ 28 (italics added).  Indeed, Plaintiff concedes she had no legal rights to the characters or song featured in those commercials, and that Mars instead licensed those rights from the Tee and Charles Addams Foundation.  *See id.* ¶¶ 14, 15, 30.  Nonetheless, she asserts that those advertisements "used and adopted" her purported (unspecified) idea for an M&M's®-*Addams Family* cross-promotion.  *Id.* ¶ 27.

Based on these allegations, Plaintiff asserts claims for (1) breach of an implied-in-fact contract (notwithstanding her concession that, *inter alia*, Mars expressly rejected her proposal,

---

[2] Contrary to Plaintiff's allegation, Masterfoods USA was never a separate corporation, but rather was a division of Mars.  And, Mars Snackfood was founded in July 2007, after the events alleged in Plaintiff's complaint.  Thus, the only Defendant with which Plaintiff could have dealt in August 2006, or that could have produced advertisements in April 2007, *see* Compl. ¶¶ 25, 27, was Mars.  Because Defendants accept the dates set forth in Plaintiff's complaint as accurate for purposes of this motion, they construe her allegations to pertain exclusively to Mars.

*see* Compl. ¶ 25); and (2) unjust enrichment (notwithstanding her concession that, *inter alia*, Mars paid the license holder for the rights to use *The Addams Family* characters and theme song, *see id.* ¶ 30).  Both claims should be dismissed.

## ARGUMENT

## I.    NEW JERSEY LAW GOVERNS PLAINTIFF'S CLAIMS.

Under New York choice of law rules, *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941), Plaintiff's claims are evaluated under the choice of law principles applicable to contract claims.  *See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 583 (2d Cir. 2006) (choice of law analysis for contract claims used for implied-in-fact contract claims); *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001) (same for quasi-contract claims).[3]  "[I]n contract cases, . . . the 'center of gravity' or 'grouping of contacts' analysis is to be applied in choice of law situations."  *Beth Israel Med. Ctr.*, 448 F.3d at 583 (citation omitted).  This test considers "the place of contracting, negotiation and performance; the location of the subject matter of the contract; and the domicile of the contracting parties."  *Id.* (quotations omitted).  The goal is to determine which state has "the most significant relationship to the transaction and the parties."  *Id.* (quotation omitted).

Here, all communications occurred between Plaintiff, a California resident, Compl. ¶ 3, and Claire O'Donnell, who worked in Mars's Hackettstown, New Jersey facility, *id.* ¶¶ 8, 18.  Had Mars accepted Plaintiff's offer (it did not), and assuming all other elements of an enforceable contract existed (they do not), the resulting contract would have been made in New Jersey.  *See Armotek Indus., Inc. v. Employers Ins. of Wausau*, 952 F.2d 756, 760 (3d Cir. 1991) ("The 'place of contracting is the place where occurred the last act necessary . . . to give the

---

[3] "Unjust enrichment sounds in quasi-contract."  *Carruthers v. Flaum*, 388 F. Supp. 2d 360, 370 (S.D.N.Y. 2005) (citation omitted).

contract binding effect.'" (quoting Restatement (Second) Conflict of Laws § 188, cmt. c

(1971))).  Although Plaintiff does not allege any negotiations concerning an M&M's®-Addams

Family promotion, she claims Ms. O'Donnell delivered Mars's rejection of the idea from New

Jersey.  Compl. ¶ 25.  And, were Mars to have compensated Plaintiff in exchange for her

purported idea, that performance presumably would have occurred at its New Jersey facility.  *See*

*Chong v. Healthtronics, Inc.*, No. CV-06-1287 (SJF) (MLO), 2007 WL 1836831, at *14

(E.D.N.Y. June 20, 2007) ("[P]laintiff does not dispute that all decisions regarding payments due

him under the alleged agreement were made in Georgia or that all payments were issued to him

from Georgia.  Accordingly, the place of performance of the . . . agreement was Georgia.").[4]  For

all these reasons, New Jersey law applies in this case.[5]

## II.    PLAINTIFF CANNOT STATE A CLAIM FOR BREACH OF AN IMPLIED-IN-FACT CONTRACT.

### A.    Motion to Dismiss Standard.

In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the Supreme Court refined the

standard for deciding motions to dismiss for failure to state a claim.  The Court adopted "a

flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual

allegations in those contexts where such amplification is needed to render the claim *plausible*."

*Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).  Under this standard,

---

[4] The location of the alleged contract's subject matter is not relevant, as the purported agreement concerns an intangible idea.  *See* Restatement (Second) of Conflict of Laws § 188, cmt. e (1971).

[5] In any event, the standards governing implied-in-fact contract and unjust enrichment claims in the "submission of ideas" context are consistent under New Jersey and New York law.  *See, e.g.*, *Johnson v. Benjamin Moore & Co.*, 788 A.2d 906, 919 (N.J. Super. Ct. App. Div. 2002) (trial judge's conclusions regarding contract-based submission of ideas claim were "supported by the *Nadel* standard for New York law and we adopt that standard" (citing *Nadel v. Play by Play Toys & Novelties, Inc.*, 208 F.3d 368 (2d Cir. 2000))); *Duffy v. Charles Schwab & Co., Inc.*, 123 F. Supp. 2d 802, 818 (D.N.J. 2000) ("We believe that New Jersey's highest court would follow the approach taken by the Second Circuit in *Nadel* . . . .").  Accordingly, where appropriate, Defendants rely on legal authority from New York as well as New Jersey.

a complaint must be dismissed if it fails to plead "enough facts to state a claim to relief that is plausible on its face," which requires more than "labels and conclusions, and a formulaic recitation of the elements of cause[s] of action." *Twombly*, 127 S. Ct. at 1965, 1974; *see also Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996) ("bald assertions and conclusions of law" insufficient to withstand motion to dismiss); *Berrian v. Pataki*, 510 F. Supp. 2d 348, 354 (S.D.N.Y. 2007) ("[B]ald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations and will not defeat a motion to dismiss.") (quotation omitted).

**B.    Plaintiff Cannot Allege the Elements of An Implied-In-Fact Contract.**

Under New Jersey law, the elements of an implied-in-fact contract are identical to those of an express contract. The only difference is that the parties' assent to an implied-in-fact contract is "manifested by conduct instead of words." *Saint Barnabas Med. Ctr. v. Essex County*, 543 A.2d 34, 39 (N.J. 1988) (quotation omitted); *see also Baer v. Chase*, 392 F.3d 609, 616 (3d Cir. 2004) (distinguishing express from implied-in-fact contracts). Thus, to establish an implied-in-fact contract, Plaintiff must allege "mutual assent, consideration, legality of object, and capacity of the parties." *Duffy*, 123 F. Supp. 2d at 818 (citing *Cohn v. Fisher*, 287 A.2d 222, 224 (N.J. Super. Ct. Law Div. 1972)); *see also Nadel*, 208 F.3d at 376 n.5 (same). Here, Plaintiff's own allegations establish the absence of mutual assent and consideration.

**1.    Plaintiff's Allegations Demonstrate No Mutual Assent.**

For at least three reasons, Plaintiff cannot allege mutual assent. <u>First</u>, she concedes that Mars expressly declined to enter into any contract with her. *See* Compl. ¶ 25 ("In or about August, 2006, Ms. O'Donnell conveyed to Plaintiff that Defendants . . . had declined to use her idea for a cross-promotion between Addams Family characters and M&M's® candies."). This is fatal to her claim that the parties had a contract, implied-in-fact or otherwise, because "[t]he law

will not imply a promise on the part of a person against his own express declaration." *Flemming v. Ronson Corp.*, 258 A.2d 153, 156 (N.J. Super Ct. Law Div. 1969); *see also Jennings v. Camp*, 13 Johns. 94 (N.Y. 1816) (quotation omitted) (same); *S. Jersey Hosp., Inc. v. Corr. Med. Servs.*, No. 02-2619 (JBS), 2005 WL 1410860, at *4 (D.N.J. June 15, 2005) ("'[Even] the rendering of a performance does not constitute an acceptance if within a reasonable time the offeree exercises reasonable diligence to notify the offeror of non-acceptance.'" (quoting Restatement (Second) Contracts § 53(2) (1981))).

Second, for mutual assent to exist, the essential terms of an alleged implied-in-fact contract must be sufficiently definite "to allow a court to determine with reasonable certainty what each party has promised to do." *Baer*, 392 F.3d at 619 (citing *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992) and *W. Caldwell v. Caldwell*, 138 A.2d 402, 410 (N.J. 1958)). These essential terms include price and duration. *Id.* ("New Jersey law deems the price term, *i.e.*, the amount of compensation, an essential term of any contract. . . . Additionally, the duration of the contract is deemed an essential term and therefore any agreement must be sufficiently definitive to allow a court to determine the agreed upon length of the contractual relationship.").[6]

Here, Plaintiff does not allege that the parties' purported implied-in-fact contract reflected any agreement as to duration or price (which is not surprising, given her concession that Mars rejected her proposal). Indeed, her complaint does not contain one word about duration. As to price, Plaintiff alleges only that she had a subjective "belie[f] . . . that Defendants would fairly and reasonably compensate her if they used her idea." Compl. ¶ 34. She does not claim

---

[6] Although the absence of a price term is not necessarily fatal if the parties specify "a practicable method by which they can determine the amount," *Baer*, 392 F.3d at 619, Plaintiff does not (and cannot) allege that the parties agreed on any such method.

the parties *agreed* that such compensation would be paid.  *See id.* ¶ 32 (Mars "knew or should have known" Plaintiff expected compensation).  Much less does she allege a meeting of the minds concerning the amount of compensation or any formula for determining it.  The lack of any allegation that the parties agreed on price or duration is fatal to Plaintiff's implied-in-fact contract claim.  *See Baer*, 392 F.3d at 620-21; *Bergin v. Century 21 Real Estate Corp.*, No. 98 Civ. 8075(JGK), 2000 WL 223833, at *5 (S.D.N.Y. Feb. 25, 2000) (under New Jersey law, "[t]he absence of any evidence, or even any allegation, that the parties reached any agreement as to the compensation the plaintiff would receive is fatal to a finding that there was a contract").

Third, Mars did not use Plaintiff's idea for a promotion involving her clients.  *See Duffy*, 123 F. Supp. 2d at 818-19 ("One aspect of the mutual assent element in an implied-in-fact contract claim involving use of a confidential submission is that the defendant used the idea.  . . . Unless a plaintiff proves that defendant used the idea, a plaintiff will not be able to prove that a defendant agreed to pay for the idea."); *Bergin*, 2000 WL 223833, at **7-8 (rejecting implied-in-fact contract claim because, *inter alia*, defendant did not use plaintiff's idea).  Again, Plaintiff's only description of the M&M's®-*Addams Family* Halloween promotion she allegedly proposed is that it would involve her clients.  *See* Compl. ¶¶ 18, 19.  But, Plaintiff does not (and cannot) allege that Mars ever made use of her clients in any capacity.  Mars's decision not to use Plaintiff's idea belies her claim that Mars assented to an implied-in-fact contract.

### 2.    Plaintiff Cannot Allege Consideration.

Nor does Plaintiff adequately allege that she provided consideration to Mars.  In the submission of ideas context, the consideration required to support an implied-in-fact contract is the suggestion of an idea that is novel to the buyer.  *See Nadel*, 208 F.3d at 376 n.5; *Duffy*, 123 F. Supp. 2d at 818 (citation omitted).  The "determination of whether an idea is novel is a question

of law for the court." *Duffy*, 123 F. Supp. 2d at 809; *see also id.* at 818 ("[A]n idea may be so lacking in novelty that, as a matter of law, the buyer is deemed to have knowledge of the idea." (citing *Nadel*, 208 F.3d at 380)).[7]  For example, when an idea consists merely of a new combination of commonly known ideas, it is not novel.  *See Baer*, 392 F.3d at 629-30; *Nadel*, 208 F.3d at 378 (citations omitted); *Johnson*, 788 A.2d at 920.  In making the novelty determination, the Court may consider:  "(1) the idea's specificity or generality (is it a generic concept or one of specific application?), (2) the idea's commonality (how many people know of this idea?), (3) the idea's originality (how different is this idea from generally known ideas?), (4) the idea's commercial availability (how widespread is the idea's use in the industry?), (5) the idea's obviousness (was the idea an obvious adaptation or application of an idea already in the domain of public knowledge?), and (6) the idea's secrecy (did an otherwise novel idea lose its novelty status because of inadequate steps taken to maintain the idea's secrecy?)."  *Duffy*, 123 F. Supp. 2d at 810 (citing *Nadel*, 208 F.3d at 378).

Here, Plaintiff's purported idea that Mars should undertake an *Addams Family*-themed Halloween promotion for one of its products contains none of the hallmarks that would warrant a novelty finding.[8]  <u>First</u>, her alleged idea is completely generic, as it does not specify the

---

[7] *See also Zikakis v. Staubach Retail Servs., Inc.*, No. 04-Civ.-9609(NRB), 2005 WL 2347852, at *3 (S.D.N.Y. Sept. 26, 2005) (dismissing misappropriation claim because idea was not novel as a matter of law); *Johnson*, 788 A.2d at 919 ("Plaintiff's ideas may be viewed as so unoriginal that, as a matter of law, they were not novel as to the defendant.").

[8] Plaintiff conclusorily recites that her (unspecified) idea was "novel."  Compl. ¶¶ 18, 20.  She does not say to whom it was novel.  *See Zikakis*, 2005 WL 2347852, at *3 n.4 ("Any contract-based claim would . . . fail because plaintiff has failed to allege that his idea was novel to the defendants." (citing *Nadel*, 208 F.3d at 376)).  And, even were the Court to construe Plaintiff's bare assertion to allege novelty to Mars, this legal conclusion devoid of supporting factual allegations is insufficient to withstand a motion to dismiss.  *Berrian*, 510 F. Supp. 2d at 354; *see also Twombly*, 127 S. Ct. at 1965 ("labels and conclusions, and a formulaic recitation of the elements of cause[s] of action" cannot defeat motion to dismiss); *Oasis Music, Inc. v. 900 U.S.A., Inc.*, 161 Misc. 2d 627, 632 (N.Y. Sup. Ct. 1994) ("A plaintiff cannot rest on mere assertions of

promotion's medium, content, theme, or message. "[A] cross-promotion between *Addams Family* characters and M&M's® candies for Halloween" could use, *inter alia*, television, radio, print, internet, film, in-person promotions, or any combination thereof, and could involve live actors, product tie-ins, candies shaped like *Addams Family* characters, *Addams Family* packaging, cartoons or other animation, clips from the *Addams Family* television program, the *Addams Family* theme song (which Plaintiff does not claim to have suggested), or literally thousands of other possibilities. Compl. ¶ 18. Or, construing Plaintiff's complaint plausibly, it could have involved Plaintiff's clients, Compl. ¶¶ 18, 19, a possibility Mars declined to pursue, *id.* ¶ 25. Had Plaintiff proposed the M&M's®-*Addams Family* television commercials described in her complaint, *see id.* ¶ 28, one would expect her to have submitted storyboards, descriptions of the advertisements, or some other concrete indication of the ads' nature and substance. *See, e.g.*, *Duffy*, 123 F. Supp. 2d at 811 (idea's specificity favored novelty finding where plaintiff submitted prototype). She does not claim to have done so. The Court may find a lack of novelty based on the genericness of Plaintiff's alleged idea alone. *See Johnson*, 788 A.2d at 915, 920 (no novelty where "details of plaintiff's submission . . . consisted of generic elements that could be used in marketing any product").

    Second, Plaintiff does not allege that she requested that Mars treat her purported idea as confidential, that she labeled it as such, or that she took any other measure to preserve her alleged idea's confidentiality. *Compare, e.g.*, *Duffy*, 123 F, Supp. 2d at 814 (plaintiff requested confidential treatment for proposal, which he marked "confidential" and "proprietary"). This factor likewise weighs against a novelty finding. *See id.* at 809 ("[A] once novel idea will lose

---

novelty and originality, but must, instead, demonstrate some basis for those [ideas].") (quotation omitted).

its novelty status if the owner of the idea fails to take adequate steps to maintain the idea's secrecy.").

 <u>Finally</u>, the idea of an *Addams Family* Halloween promotion is common, commercially available, unoriginal, and obvious. *The Addams Family* is synonymous with Halloween in the same way champagne and noisemakers are associated with New Years Eve, or romantic images are connected with Valentine's Day.[9] As the amazon.com review for "*The Addams Family* – Volume One*" DVD advertises: "'There's a touch of madness' in the Addams household, where 'every day is Halloween.'" Amazon.com Review of "Addams Family DVD – Volume One," *available at* http://www.amazon.com/Addams-Family-One-Arthur-Lubin/dp/B000HEZEYG (quoting line spoken by Gomez, *Addams Family* patriarch) (last visited April 8, 2008). Indeed, many of the *Addams Family* characters are monsters, and all of the characters are declared by the show's theme song to be "creepy," "kooky," "mysterious," and "spooky."[10] Discovery is not required to show the link between these images and Halloween.

---

[9] The Court may take judicial notice of the fact – which is "not subject to reasonable dispute," Fed. R. Evid. 201(b) – that the longstanding association between the Addams Family and Halloween was well-known to the entire television-watching world (including Mars) long before August 2006. *See Ty, Inc. v. GMA Accessories, Inc.*, 959 F. Supp. 936, 940 (N.D. Ill. 1997) ("[T]he court takes judicial notice of the several news articles submitted by Ty. The existence of these articles demonstrates that Beanie Babies are a widely-disseminated popular item."); *Fausto v. Diamond*, 589 F. Supp. 451, 462 (D.R.I. 1984) ("The court must take judicial notice, Fed. R. Evid. 201, that portrayals of a mother and child have been a popular subject of artists – even those of atheistic bent – for centuries."); *Am. Greetings Corp. v. Easter Unlimited, Inc.,* 579 F. Supp. 607, 613 (S.D.N.Y. 1983) ("judicial notice of the fact that the stuffed bear is among the most common of stuffed toys"); *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 500 n.1 (2d Cir. 1982) (judicial notice of "traditional features of a snowman"); *see also United States v. Ricciardi*, 357 F.2d 91, 97 (2d Cir. 1966) ("Judges are not necessarily to be ignorant in Court of what every one else, and they themselves out of Court, are familiar with.") (quotation omitted).

[10] The theme song's full lyrics are:

They're creepy and they're kooky,
Mysterious and spooky,

Moreover, both seasons of the original television series had episodes specifically devoted to Halloween: *Halloween With The Addams Family* (1964) and *Halloween – Addams Style* (1965). *See* Addams Family Episode Guide, *available at* http://epguides.com/AddamsFamily/ (last visited April 8, 2008). In fact, *Halloween With The Addams Family* (1964) is contained on the "Addams Family DVD Volume 1," which Plaintiff claims she was promoting when she contacted Mars in August 2006. *See* Compl. ¶ 10; Amazon.com Review of "Addams Family DVD – Volume One," *available at* http://www.amazon.com/Addams-Family-One-Arthur-Lubin/dp/B000HEZEYG (last visited April 8, 2008). And, when the show's creators sought to revive it in the late 1970s, they called their pilot *Halloween With The Addams Family* (1977). *See* Addams Family Episode Guide, *available at* http://epguides.com/AddamsFamily/ (last visited April 8, 2008). Moreover, dozens (if not hundreds) of albums of Halloween-themed music contain the *Addams Family* theme song, the lyrics of which are overtly evocative of Halloween.[11] Were that not enough, a simple Google search for "Addams Family Halloween"

---

They're all together ooky,
The Addams Family.
Their house is a museum.
When people come to see 'em
They really are a screa-um.
The Addams Family.

Neat, Sweet, Petite

So get a witch's shawl on.
A broomstick you can crawl on.
We're gonna pay a call on
The Addams Family.

The Addams Family Theme Lyrics, *available at* http://www.lyricsondemand.com/tvthemes/theaddamsfamilylyrics.html (last visited April 8, 2008).

[11] *See, e.g.*, Amazon.com Listing for "The Complete Halloween Party Album," *available at* http://www.amazon.co.uk/Complete-Halloween-Party-

reveals countless Halloween-themed *Addams Family* products, costumes, and paraphernalia. Thus, Plaintiff's alleged idea for an M&M's®-*Addams Family* Halloween promotion is, at best, "nothing more than a variation on a basic theme" – not an idea that qualifies as novel. *Nadel*, 208 F.3d at 378 (citation omitted).

## III.    PLAINTIFF CANNOT STATE A CLAIM FOR UNJUST ENRICHMENT.

Plaintiff's unjust enrichment claim fails for many of the same reasons. To establish unjust enrichment, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994) (citations omitted). "The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Id.* Moreover, to state an unjust enrichment claim in the submission-of-ideas context, Plaintiff must plead facts showing "(1) [her] idea was novel; (2) it was made in confidence; and (3) it was adopted and made use of." *Flemming*, 258 A.2d at 156-57; *Bergin*, 2000 WL 223833, at *9 (same). Plaintiff fails to meet this standard for at least four reasons.

---

Album/dp/B000VJVSQA/ref=pd_sim_m_h__img_8 (last visited April 8, 2008); Amazon.com Listing for "Halloween Hits," *available at* http://www.amazon.co.uk/Halloween-Hits-Various/dp/B0000032GJ (last visited April 8, 2008); Amazon.com Listing for "Halloween Howls," *available at* http://www.amazon.co.uk/Halloween-Howls-Andrew-Gold/dp/B0000033VI/ref=pd_sim_m_h__img_4 (last visited April 8, 2008); Amazon.com Listing for "These Ghoulish Things: Horror Hits for Halloween," *available at* http://www.amazon.com/These-Ghoulish-Things-Horror-Halloween/dp/B000A8SXN8/ref=pd_sim_m_h__title_1 (last visited April 8, 2008); Amazon.com Listing for "The Ultimate Halloween Party Album," *available at* http://www.amazon.co.uk/Ultimate-Halloween-Party-Album/dp/B000HT36DC/ref=pd_sim_m_h__img_7 (last visited April 8, 2008); Rhapsody.com Listing for "Kidz Bop Halloween – 'The Addams Family,'" *available at* http://www.rhapsody.com/kidzbopkids/kidzbophalloween/theaddamsfamily (last visited April 8, 2008).

<u>First</u>, Mars cannot have been unjustly enriched by the only idea that Plaintiff claims to have proposed – a promotion involving her clients – because they never used that idea. As a matter of law, a party cannot be unjustly enriched by a benefit it did not accept. *See Flemming*, 258 A.2d at 157 (unjust enrichment requires that defendant "adopted and made use of" plaintiff's idea) (citations omitted); *Bergin*, 2000 WL 223833, at *10 (no unjust enrichment where "there is no evidence that [defendant] used the plaintiff's idea"); *Haskell v. Lever Bros. Co.*, 243 F. Supp. 601, 614 (S.D.N.Y. 1965) ("In view of the fact that . . . the defendant does not use, and has not disclosed, the configuration proposed by the plaintiff . . . the plaintiff is not entitled to recover damages under the charge of unjust enrichment.");[12] *Stephen Pevner, Inc. v. Ensler*, 309 A.D.2d 722, 723 (1st Dep't 2003) (rejecting unjust enrichment claim, which "rel[ied] on a single writing by defendant recognizing plaintiff's right to some payment for a single book publishing agreement" because "that publication never took place, and no revenue was ever generated from that agreement, [and thus] defendant received no benefit from plaintiff's services" (citing *Martin H. Bauman Assocs., Inc. v. H & M Int'l Transport, Inc.*, 171 A.D.2d 479, 484 (1st Dep't 1991))).

<u>Second</u>, Plaintiff cannot show that Mars made use of the *Addams Family* characters and theme song "without payment." *VRG*, 641 A.2d at 526. As Plaintiff acknowledges, Mars paid a substantial licensing fee to the Tee and Charles Addams Foundation, which owns the legal rights to the characters and song used in their ads. Compl. ¶ 30. Equity does not require that Mars make a second payment for this same benefit, especially to someone who lacked the legal capacity to provide it. *See MBL Contracting Corp. v. King World Prods., Inc.*, 98 F. Supp. 2d 492, 495-96 (S.D.N.Y. 2000) (dismissing unjust enrichment claim that would result in defendant

---

[12] "New Jersey courts have looked to the law of other states, including New York, in developing the law of quasi-contract." *Bergin*, 2000 WL 223833, at *9 n.1 (citing *Flemming*, 258 A.2d at 156-57).

making duplicative payments for same benefit); *B & G Crane Serv., Inc. v. Dolphin Titan Int'l, Inc.*, 762 F.2d 1292, 1295 (5th Cir. 1985) (no unjust enrichment where defendant "had fully paid" for the property in question, and "did not receive anything it had not paid for," holding: "We will not require [defendant] to pay twice for its [property]."); *Joest Vibratech, Inc. v. N. Star Steel Co.*, 109 F. Supp. 2d 746, 751 (N.D. Ohio 2000) (rejecting unjust enrichment claim because "[t]o require Defendant . . . to pay twice for materials delivered would work an injustice on [Defendant]").  Having paid the Tee and Charles Addams Foundation for the rights to *The Addams Family* characters and theme song, *see* Compl. ¶ 30, as well as BBDO to produce these advertisements, *see id.* ¶ 29, Mars obtained these benefits at no one's expense but its own.

Third, for the reasons set forth above, Plaintiff's alleged proposal – a "cross-promotion between *Addams Family* characters and M&M's® candies for Halloween," Compl. ¶ 18 (italics added) – lacks novelty as a matter of law.  This too is fatal to her unjust enrichment claim.  *See Duffy*, 123 F. Supp. 2d at 815 ("New Jersey law does not impose an obligation on a defendant to pay for use of an idea submitted to it in confidence unless the idea is novel."); *Bergin*, 2000 WL 223833, at **9-10 (same).[13]

Finally, Plaintiff does not allege that her idea was submitted in confidence.  *See Flemming*, 258 A.2d at 157 (plaintiff claiming unjust enrichment must "establish as a

---

[13] Some caselaw suggests that "concreteness" is a separate element of an unjust enrichment claim in the submission-of-ideas context, as opposed to an issue to be considered in assessing novelty. *See Flemming*, 258 A.2d at 156 (defendant can be unjustly enriched only through the presentation of a "concrete" idea); *Radio Today, Inc. v. Westwood One, Inc.*, 684 F. Supp. 68, 72 (S.D.N.Y. 1988) ("[P]laintiffs' quasi-contract claim requires proof that a novel and concrete idea was appropriated . . . .").  Either way, Plaintiff's proposal was far from concrete.  She does not allege the promotion's medium, content, theme, or message, nor does she claim to have submitted any tangible representation of the idea.  As such, her conclusory assertions that her idea was "concrete," *see* Compl. ¶¶ 18, 20, are another example of legal conclusions that are insufficient to withstand a motion to dismiss.  *Berrian*, 510 F. Supp. 2d at 354; *see also Twombly*, 127 S. Ct. at 1965 ("labels and conclusions, and a formulaic recitation of the elements of cause[s] of action" cannot defeat motion to dismiss).

prerequisite to relief that . . . the idea . . . was [submitted] in confidence"); *see also Johnson*, 788

A.2d at 914 (same).  Indeed, absent a confidential submission, Plaintiff could have no

"reasonable expectation of compensation" from Mars.  *ABD Monroe, Inc. v. Monroe Tp.*, No.

04-1412 (WHW), 2008 WL 58876, at *13 (D.N.J. Jan. 3, 2008).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P.

12(b)(6) should be granted.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 14th day of April, 2008, I caused true and correct copies of

Defendants' Notice of Motion and Memorandum of Law in Support of Motion to Dismiss

Pursuant to Fed. R. Civ. P. 12(b)(6) to be served electronically via the Court's ECF system on

the following counsel:


Kevin Thomas Mulhearn
Kevin T. Mulhearn, P.C.
60 Dutch Hill Road
Suite 8
Orangeburg, NY 10962
(845) 398-0361
(845) 398-3836
Email: kmulhearn@ktmlaw.net

*Attorney for Plaintiffs*


_____/s/_____
Katherine G. Lindsey (KL-0902)