UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| BONNIE VENT, d/b/a GENESIS CREATIONS, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 7:08-cv-02538-SCR |
| | ) |
| v. | ) (ECF) |
| | ) |
| MARS SNACKFOOD US, LLC, and MARS, INCORPORATED, | ) ORAL ARGUMENT REQUESTED |
| | ) |
| | ) |
| Defendants. | ) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**


Respectfully submitted,

WILLIAMS & CONNOLLY LLP

_____/s/_____
Katherine G. Lindsey (KL-0902)
R. Hackney Wiegmann
Kenneth J. Brown

725 Twelfth Street, N.W.
Washington, D.C.  20005
(202) 434-5000
(202) 434-5029 (facsimile)

*Attorneys for Defendants*


Dated:  May 30, 2008

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

PROCEDURAL HISTORY AND BACKGROUND................................................... 2

ARGUMENT ................................................................................................................ 4

I.      NEW JERSEY LAW GOVERNS PLAINTIFF'S CLAIMS. ............................. 4

II.     PLAINTIFF CANNOT STATE A CLAIM FOR BREACH OF AN
IMPLIED-IN-FACT CONTRACT...................................................................... 9

      A.     Motion to Dismiss Standard....................................................................... 9

      B.     Plaintiff Cannot Allege the Elements of An Implied-In-Fact Contract ................. 9

            1.     Plaintiff's Allegations Demonstrate No Mutual Assent ........................... 10

            2.     Plaintiff Cannot Allege Consideration...................................................... 12

III.    PLAINTIFF CANNOT STATE A CLAIM FOR UNJUST ENRICHMENT................. 18

IV.    PLAINTIFF CANNOT STATE A CLAIM FOR MISAPPROPRIATION OF
IDEAS.................................................................................................................. 21

      A.     Plaintiff Fails to State a Misappropriation of Ideas Claim Under
New Jersey Law ....................................................................................... 21

      B.     Plaintiff Fails to State a Misappropriation of Ideas Claim Under
California Law ........................................................................................... 24

CONCLUSION............................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*ABD Monroe, Inc. v. Monroe Tp.*, No. 04-1412 (WHW), 2008 WL 58876
    (D.N.J. Jan. 3, 2008) ..................................................................................................20

*Ahlert v. Hasbro, Inc.*, 325 F. Supp. 2d 509 (D.N.J. 2004) ......................................8, 15

*Am. Greetings Corp. v. Easter Unlimited, Inc.,* 579 F. Supp. 607 (S.D.N.Y. 1983)....................16

*Armotek Indus., Inc. v. Employers Ins. of Wausau*, 952 F.2d 756 (3d Cir. 1991) ..........................6

*AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266 (2d Cir. 1992)............................................................7

*B & G Crane Serv., Inc. v. Dolphin Titan Int'l, Inc.*, 762 F.2d 1292 (5th Cir. 1985) ..................19

*Baer v. Chase*, 392 F.3d 609 (3d Cir. 2004) ............................................................10, 11, 13, 14

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ...................................................2, 9, 15, 20

*Bergin v. Century 21 Real Estate Corp.*, No. 98 Civ. 8075(JGK), 2000 WL 223833
    (S.D.N.Y. Feb. 25, 2000) .........................................................11, 12, 13, 14, 18, 20, 21

*Berrian v. Pataki*, 510 F. Supp. 2d 348 (S.D.N.Y. 2007).......................................................9, 13, 20

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
    448 F.3d 573 (2d Cir. 2006)......................................................................................4, 5

*Carruthers v. Flaum*, 388 F. Supp. 2d 360 (S.D.N.Y. 2005)...............................................................4

*Chong v. Healthtronics, Inc.*, No. CV-06-1287 (SJF) (MLO), 2007 WL 1836831
    (E.D.N.Y. June 20, 2007) ...............................................................................................6

*Czech Beer Imps., Inc. v. C. Haven Imps., LLC*, No. 04 Civ. 2270(RCC),
    2005 WL 1490097 (S.D.N.Y. June 22, 2005) ..................................................................7

*Duffy v. Charles Schwab & Co., Inc.*, 123 F. Supp. 2d 802 (D.N.J. 2000) .......................... *passim*

*Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498 (2d Cir. 1982).......................................16

*Fausto v. Diamond*, 589 F. Supp. 451 (D.R.I. 1984)....................................................................16

*Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386 (2d Cir. 2001) .................................................4

*Flaherty v. Filardi*, No. 03 Civ. 2167(LTS)(HBP), 2007 WL 2734633
(S.D.N.Y. Sept. 19, 2007) .......................................................24

*Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Secs., Inc.*,
93 F.3d 1171 (3d Cir. 1996)...............................................22

*GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377 (2d Cir. 2006) ..........7

*Green v. Schwarzenegger*, No. CV 93-5893-WMB, 1995 WL 874191
(C.D. Cal. July 12, 1995) ..................................................4

*Haskell v. Lever Bros. Co.*, 243 F. Supp. 601 (S.D.N.Y. 1965) ...................................20

*Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2d Cir. 1995) ...................................13

*Hogan v. DC Comics*, No. 96-CV-1749, 1997 WL 570871 (N.D.N.Y. Sept. 9, 1997)................23

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) .....................................................9

*Joest Vibratech, Inc. v. N. Star Steel Co.*, 109 F. Supp. 2d 746 (N.D. Ohio 2000) .......................19

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) ..........................................4

*Leeds v. Meltz*, 85 F.3d 51 (2d Cir. 1996)........................................................9

*MBL Contracting Corp. v. King World Prods., Inc.*, 98 F. Supp. 2d 492 (S.D.N.Y. 2000)..........19

*Nadel v. Play by Play Toys & Novelties, Inc.*, 208 F.3d 368 (2d Cir. 2000) .....6, 10, 12, 13, 18, 21

*Radio Today, Inc. v. Westwood One, Inc.*, 684 F. Supp. 68 (S.D.N.Y. 1988)..............................20

*Simon v. Philip Morris Inc.*, 124 F. Supp. 2d 46 (E.D.N.Y. 2000)...................................8

*S. Jersey Hosp., Inc. v. Corr. Med. Servs.*, No. 02-2619 (JBS), 2005 WL 1410860
(D.N.J. June 15, 2005) ...................................................10

*Ty, Inc. v. GMA Accessories, Inc.*, 959 F. Supp. 936 (N.D. Ill. 1997)..........................16

*United States v. Chestman*, 947 F.2d 551 (2d Cir. 1991) ..............................................22

*United States v. Falcone*, 257 F.3d 226 (2d Cir. 2001) ..............................................22

*United States v. Ricciardi*, 357 F.2d 91 (2d Cir. 1966) ...............................................16

*White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 460 F.3d 281 (2d Cir. 2006).....................8

*Whitfield v. Lear*, 751 F.2d 90 (2d Cir. 1984).................................................................24

*Zikakis v. Staubach Retail Servs., Inc.*, No. 04-Civ.-9609(NRB), 2005 WL 2347852
    (S.D.N.Y. Sept. 26, 2005).......................................................................7, 12

## STATE CASES

*Cohn v. Fisher*, 287 A.2d 222 (N.J. Super. Ct. Law Div. 1972) ....................................10

*Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66 (N.Y. 1993).....................................7, 8, 9

*Desny v. Wilder*, 299 P.2d 257 (Cal. 1956) ..................................................................24

*Donahue v. Ziv Television Programs, Inc.*, 245 Cal. App. 2d 593
    (Cal. Ct. App. 1966).........................................................................................24

*Flemming v. Ronson Corp.*, 258 A.2d 153 (N.J. Super Ct. Law Div. 1969) .........10, 18, 20, 21, 22

*Hollywood Screentest of Am., Inc. v. NBC Universal, Inc.*, 60 Cal. Rptr. 3d 279
    (Cal. Ct. App. 2007)....................................................................................24, 25

*Jennings v. Camp*, 13 Johns. 94 (N.Y. 1816) ...............................................................10

*Johnson v. Benjamin Moore & Co.*, 788 A.2d 906
    (N.J. Super. Ct. App. Div. 2002) ............................................4, 6, 12, 14, 20, 22

*Martin H. Bauman Assocs., Inc. v. H & M Int'l Transp., Inc.*, 171 A.D.2d 479
    (1st Dep't 1991) ................................................................................................21

*Matter of Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219 (N.Y. 1993)...................................5

*McKelvey v. Pierce*, 800 A.2d 840 (N.J. 2002) ............................................................22

*Oasis Music, Inc. v. 900 U.S.A., Inc.*, 161 Misc. 2d 627 (N.Y. Sup. Ct. 1994)......................13, 14

*Sachs v. Cluett, Peabody & Co.*, 265 A.D. 497 (N.Y.A.D. 1st Dep't 1944) ................................23

*Saint Barnabas Med. Ctr. v. Essex County*, 543 A.2d 34 (N.J. 1988)..........................10

*Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189 (N.Y. 1985)......................................9

*Stephen Pevner, Inc. v. Ensler*, 309 A.D.2d 722 (1st Dep't 2003)................................21

*Tele-Count Eng'rs, Inc. v. P. Tel. & Tel. Co.*, 168 Cal. App. 3d 455
    (Cal. Ct. App. 1985)..........................................................................................23

*VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519 (N.J. 1994) ...................................................18, 19

*Weichert Co. Realtors v. Ryan*, 608 A.2d 280 (N.J. 1992).............................................................11

*Weitzenkorn v. Lesser*, 256 P.2d 947 (Cal. 1953)........................................................................24

*W. Caldwell v. Caldwell*, 138 A.2d 402 (N.J. 1958)....................................................................11

## FEDERAL STATUTES

Fed. R. Civ. P. 12(b)(6)..................................................................................................................25

Fed. R. Evid. 201(b).......................................................................................................................16

## SECONDARY LEGAL

Restatement (Second) Conflict of Laws § 188, cmt. c (1971)...........................................................6

Restatement (Second) Conflict of Laws § 188, cmt. e  (1971)..........................................................6

Restatement (Second) Contracts § 53(2) (1981)............................................................................10

## MISCELLANEOUS

Addams Family Episode Guide, *available at* http://epguides.com/AddamsFamily/
    (last visited May 27, 2008) ....................................................................................................17

The Addams Family Theme Lyrics, *available at*
    http://www.lyricsondemand.com/tvthemes/theaddamsfamilylyrics.html (last
    visited May 27, 2008) ............................................................................................................17

Amazon.com Listing for "The Complete Halloween Party Album," *available at*
    http://www.amazon.co.uk/Complete-Halloween-Party-
    Album/dp/B000VJVSQA/ref=pd_sim_m_h__img_8 (last visited May 27, 2008) ..........17

Amazon.com Listing for "Halloween Hits," *available at*
    http://www.amazon.co.uk/Halloween-Hits-Various/dp/B0000032GJ
    (last visited May 27, 2008) ....................................................................................................17

Amazon.com Listing for "Halloween Howls," *available at*
    http://www.amazon.co.uk/Halloween-Howls-Andrew-
    Gold/dp/B0000033VI/ref=pd_sim_m_h__img_4 (last visited May 27, 2008) .................18

Amazon.com Listing for "These Ghoulish Things:  Horror Hits for Halloween,"
    *available at* http://www.amazon.co.uk/These-Ghoulish-Things-Horror-
    Halloween/dp/B000A8SXN8/ref=pd_sim_m_h__title_1 (last visited May 27,
    2008) ...................................................................................................................18

Amazon.com Listing for "The Ultimate Halloween Party Album," *available at*
    http://www.amazon.co.uk/Ultimate-Halloween-Party-
    Album/dp/B000HT36DC/ref=pd_sim_m_h__img_7 (last visited May 27, 2008) ...........18

Amazon.com Review of "Addams Family DVD – Volume One," *available at*
    http://www.amazon.com/Addams-Family-One-Arthur-Lubin/dp/B000HEZEYG
    (last visited May 27, 2008) ...............................................................................16, 17

Rhapsody.com Listing for "Kidz Bop Halloween – 'The Addams Family,'" *available at*
    http://www.rhapsody.com/kidzbopkids/kidzbophalloween/theaddamsfamily (last
    visited May 27, 2008) ...........................................................................................18

Plaintiff Bonnie Vent is a "freelance entertainment broker" who represents actors from the 1960s television show *The Addams Family*. Am. Compl. ¶¶ 4, 5. She alleges that she proposed the "novel" idea that Defendants Mars, Incorporated ("Mars") and Mars Snackfood US, LLC ("Mars Snackfood") undertake a Halloween cross-promotion (of some unspecified type) involving her clients, animated M&M's®, and an *Addams Family* DVD her clients were promoting. *See id.* ¶¶ 10-12, 17-19. She claims the parties had an implied-in-fact contract to compensate her for this idea, and that Mars misappropriated and was unjustly enriched by its alleged use of the idea. Plaintiff's amended complaint, however, belies these allegations. She admits that Mars expressly rejected her idea. *Id.* ¶ 27. And, Plaintiff does not (and cannot) claim to have suggested the television commercials that Mars did air, which were not a cross-promotion and did not involve her clients or the *Addams Family* DVD, but instead used M&M's® dressed as *Addams Family* characters, set to the show's theme song, to advertise a new line of dark chocolate M&M's®. *Id.* ¶ 21, 30. Indeed, Plaintiff concedes that she lacks any rights to the *Addams Family* characters or theme song, which Mars licensed (at substantial cost) from their lawful owners. *Id.* ¶¶ 14, 32, 33. These concessions doom her claims.

Furthermore, Plaintiff's alleged cross-promotion idea is not novel. She claims she "developed" this idea by taking "existing material from common sources," *id.* ¶ 22 – *i.e.*, Mars's "past promot[ions of] its M&M's® products with movie releases and DVDs," *id.* ¶ 21 – and applying it to the particular DVD her clients were promoting. *Id.* ¶ 18. As a matter of law, such trivial adaptations of existing ideas are not novel. Nor is there novelty in proposing an *Addams Family*-themed Halloween promotion, which is like suggesting a Christmas promotion involving reindeer on the roof or an Easter promotion featuring a certain bunny. For this reason as well, Plaintiff's claims should be dismissed.

## PROCEDURAL HISTORY AND BACKGROUND

Plaintiff served her original complaint in this matter on March 25, 2008. She alleged that Defendants improperly used a promotional idea that she submitted with the expectation of compensation, and based on this allegation, asserted claims for breach of an implied-in-fact contract and unjust enrichment. *See* Docket # 1. On April 14, 2008, Defendants moved to dismiss the complaint in its entirety. *See* Docket # 6. Instead of opposing the motion, Plaintiff filed the amended complaint now at issue.

Plaintiff asserts that, as a freelance entertainment broker, she "represent[s] and promot[es] various individuals . . . on a project-by-project basis." Am. Compl. ¶ 4.[1] Her clients include actors Lisa Loring, Ken Weatherwax, and Felix Silla, each of whom appeared on the 1960s television show *The Addams Family. Id.* ¶ 5. On August 1, 2006, these clients contracted with Twentieth Century Fox Home Entertainment, LLC ("Twentieth Century") to promote sales of "*The Addams Family* DVD Volume 1." *Id.* ¶¶ 10-12, 17. Later that month, Plaintiff – who was assisting Loring, Weatherwax, and Silla in these promotional efforts, *id.* ¶ 12 – contacted Claire O'Donnell, "a Senior Marketing Buyer" for Mars.[2] *Id.* ¶ 18. Plaintiff claims she pitched to Ms. O'Donnell "a specific, novel, and concrete idea for a cross-promotion between *Addams Family* characters and M&M's® candies for Halloween." *Id.* (italics added). In her original complaint, Plaintiff did not elaborate on this purported proposal, other than to allege that

---

[1] As required, Defendants assume the truth of Plaintiff's factual allegations for purposes of this motion to dismiss. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).

[2] Masterfoods USA was a division of Mars, not a separate corporation. And Plaintiff claims that Mars Snackfood, the successor-in-interest to Masterfoods USA, was not founded until 2008, Am. Compl. ¶ 8, though this actually occurred in July 2007. Either way, the only Defendant with which Plaintiff could have dealt in August 2006, or that could have produced advertisements in April 2007, *see id.* ¶¶ 25, 27, was Mars. Defendants therefore construe her allegations to pertain exclusively to Mars.

"Plaintiff also conveyed to Ms. O'Donnell that she would offer her *Addams Family* clients . . . to help with this cross-promotion." Orig. Compl. ¶ 19 (italics added). In its initial motion to dismiss, Mars pointed out that it did not use this idea, which in any event lacks novelty. *See* Memorandum in Support of Motion to Dismiss (Docket # 6) at 1, 7-12. Plaintiff responded by repeating these allegations, *see* Am. Compl. ¶ 19, and adding that "[t]he idea [she] conveyed . . . to Ms. O'Donnell specifically mentioned the use of animated M&M's® characters with *Addams Family* characters for a cross-promotion of the two products (M&M's® candies and *Addams Family* DVD)." *Id.* ¶ 18 (italics added). Thus, Plaintiff now asserts that she suggested a Halloween cross-promotion (in some unspecified medium) involving her clients, animated M&M's®, and the *Addams Family* DVD her clients were promoting. She claims she was aware of Mars's "past promot[ions of] its M&M's® products with movie releases and DVDs," *id.* ¶ 21, and suggested Mars do the same for the particular DVD her clients were promoting. *Id.* ¶ 18.

Plaintiff does not claim Mars accepted her offer of her clients' services or became involved in any capacity in promoting the *Addams Family* DVD. To the contrary, Ms. O'Donnell expressly "conveyed to Plaintiff that Defendants . . . had declined to use her idea . . . ." Am. Compl. ¶ 27. Instead, Plaintiff alleges that Mars "used and adopted" her idea in advertisements for a new line of dark chocolate M&M's®, *id.* ¶ 21, 29, which were not cross-promotions and had nothing to do with Plaintiff's clients or the *Addams Family* DVD (and thus could not have monetarily benefited Plaintiff or her clients). *Id.* ¶¶ 29, 30. These ads allegedly "featured M&M's® chocolate candies transmogrified to resemble the cast of the classic television program, *The Addams Family*, and featured *The Addams Family* theme song, complete with finger snaps." *Id.* ¶ 30 (italics added). Plaintiff concedes, however, that she had no legal rights to the characters or song featured in Mars's dark chocolate M&M's® commercials, which it

3

licensed from the Tee and Charles Addams Foundation (characters) and Vic Mizzy (song).  *See id.* ¶¶ 14, 15, 32, 33.  Nor does she claim to have had any interest in promoting M&M's®, which are proprietary to Mars.

Based on these allegations, Plaintiff asserts claims for (1) breach of an implied-in-fact contract (notwithstanding her concession that, *inter alia*, Mars expressly rejected her proposal, *see* Am. Compl. ¶ 27); and (2) "unjust enrichment/misappropriation of idea" (notwithstanding her concession that, *inter alia*, Mars paid the license holders for the rights to use *The Addams Family* characters and theme song, *see id.* ¶¶ 32, 33).  Each of these claims should be dismissed.

## **ARGUMENT**

## I.    **NEW JERSEY LAW GOVERNS PLAINTIFF'S CLAIMS.**

Under New York choice of law rules, *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941), Plaintiff's implied-in-fact contract and unjust enrichment claims are evaluated under the choice of law principles applicable to contract claims.[3]  *See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 583 (2d Cir. 2006) (choice of law analysis for contract claims used for implied-in-fact contract claims); *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001) (same for quasi-contract claims).[4]  "[I]n contract

---

[3] Plaintiff appears to take the position that California law governs her claims.  *See* Am. Compl. ¶¶ 15, 32, 34, 41, 42, 44, 45 (alleging connections between California and this dispute).  If that is her position, a choice of law analysis might be required for her implied-in-fact contract claim were the Court to reach the issue of novelty, on which New Jersey and California law differ.  *See Duffy v. Charles Schwab & Co., Inc.*, 123 F. Supp. 2d 802, 818 (D.N.J. 2000) (New Jersey requires "novelty to the buyer") (citation omitted); *Green v. Schwarzenegger*, No. CV 93-5893-WMB, 1995 WL 874191, at *12 (C.D. Cal. July 12, 1995) (California requires "novelty . . . in implied-in-fact contract cases, unless it can be inferred from 'unequivocal conduct' that the recipient of the idea agreed to pay for it even if the idea was not novel") (quotation omitted); *Johnson v. Benjamin Moore & Co.*, 788 A.2d 906, 916-17 (N.J. Super. Ct. App. Div. 2002) (noting these differences).

[4] "Unjust enrichment sounds in quasi-contract."  *Carruthers v. Flaum*, 388 F. Supp. 2d 360, 370 (S.D.N.Y. 2005) (citation omitted).

cases, . . . the 'center of gravity' or 'grouping of contacts' analysis is to be applied in choice of law situations." *Beth Israel Med. Ctr.*, 448 F.3d at 583 (citation omitted). This test considers "the place of contracting, negotiation and performance; the location of the subject matter of the contract; and the domicile of the contracting parties." *Id.* (quotations omitted). The goal is to determine which state has "the most significant relationship to the transaction and the parties." *Id.* (quotation omitted).

Here, all communications occurred between Plaintiff, a California resident, Am. Compl. ¶ 3,[5] and Claire O'Donnell, who worked in Mars's Hackettstown, New Jersey facility. *See id.* ¶¶ 8, 18 (Plaintiff contacted O'Donnell "via a telephone call forwarded to [Mars's] New Jersey office"). Had Mars accepted Plaintiff's offer (it did not), and assuming all other elements of an

---

[5] Plaintiff's allegations concerning additional California contacts lack merit, as these contacts lack any connection to her claims. *See Matter of Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 226 (N.Y. 1993) ("Critical to a sound analysis . . . is selecting the contacts that obtain significance in the particular contract dispute."). First, she notes that MGM, which allegedly owns the rights to the *Addams Family* television characters, maintains its principal place of business in California. Am. Compl. ¶ 15. That is irrelevant. Plaintiff does not (and could not) base her claims on Mars's licensing of the *Addams Family* characters from their lawful owner. And, in any event, she claims Mars used the original *Addams Family* characters, which it licensed from the Tee and Charles Addams Foundation, not the television characters that MGM allegedly owns. *See id.* ¶¶ 14, 33. Second, Plaintiff claims Mars licensed the *Addams Family* theme song from Vic Mizzy, a California resident. *Id.* ¶ 32. *But see id.* ¶ 33 (claiming Mars licensed the song from the Tee and Charles Addams Foundation in New York). This is equally irrelevant because Plaintiff does not claim to have proposed using the theme song. Third, Plaintiff notes that Mars's dark chocolate M&M's® ads aired "throughout the United States, including within . . . California." *Id.* ¶ 34. This is true, but likewise irrelevant – Mars's nationwide ad campaign also aired in New Jersey. Finally, Plaintiff speculates that, had she executed a written contract with Mars, it would have been signed and performed in California and contained a California choice of law clause. *Id.* ¶ 41, 42, 44, 45. Disregarding that Mars never would have agreed to these terms – and resisting the temptation to speculate about what other provisions this imaginary contract might have contained – Plaintiff concedes that no such document was executed. *Id.* ¶ 42 (Plaintiff "would have insisted" on these terms "[i]n the event Defendants had reached agreement with Plaintiff as to essential expressed contract terms such as duration and price"). To the contrary, she claims an implied-in-fact contract was formed based on her uninvited telephone solicitations to Mars's New Jersey facility. *Id.* ¶ 18. For the reasons noted in the text, that claim is governed by New Jersey law.

enforceable contract existed (they do not), the resulting contract would have been made in New Jersey. *See Armotek Indus., Inc. v. Employers Ins. of Wausau*, 952 F.2d 756, 760 (3d Cir. 1991) ("The 'place of contracting is the place where occurred the last act necessary . . . to give the contract binding effect.'" (quoting Restatement (Second) Conflict of Laws § 188, cmt. c (1971))). Although Plaintiff does not allege any negotiations concerning an M&M's®-Addams Family promotion, she claims Ms. O'Donnell delivered Mars's rejection of the idea from New Jersey. Am. Compl. ¶ 27. And, were Mars to have compensated Plaintiff in exchange for her purported idea, that performance presumably would have occurred at its New Jersey facility. *See Chong v. Healthtronics, Inc.*, No. CV-06-1287 (SJF) (MLO), 2007 WL 1836831, at *14 (E.D.N.Y. June 20, 2007) ("[P]laintiff does not dispute that all decisions regarding payments due him under the alleged agreement were made in Georgia or that all payments were issued to him from Georgia. Accordingly, the place of performance of the . . . agreement was Georgia.").[6] For all these reasons, New Jersey law governs Plaintiff's implied-in-fact contract and unjust enrichment claims. [7]

---

[6] Where appropriate, Defendants rely on legal authority from New York as well as New Jersey, as the standards governing implied-in-fact contract and unjust enrichment claims in the "submission of ideas" context are consistent in these jurisdictions. *See, e.g., Johnson*, 788 A.2d at 919 (trial judge's conclusions regarding contract-based submission of ideas claim were "supported by the *Nadel* standard for New York law and we adopt that standard" (citing *Nadel v. Play by Play Toys & Novelties, Inc.*, 208 F.3d 368 (2d Cir. 2000))); *Duffy*, 123 F. Supp. 2d at 818 ("We believe that New Jersey's highest court would follow the approach taken by the Second Circuit in *Nadel* . . . .").

[7] The location of the alleged contract's subject matter is not relevant, as the purported agreement concerns an intangible idea. *See* Restatement (Second) of Conflict of Laws § 188, cmt. e (1971).

6

Plaintiff's misappropriation of ideas claim, by contrast, is governed by New York's choice of law rule for torts.[8]  *See, e.g.*, *Zikakis v. Staubach Retail Servs., Inc.*, No. 04-Civ.-9609(NRB), 2005 WL 2347852, at *3 (S.D.N.Y. Sept. 26, 2005) (discussing "tort of misappropriation").  For tort claims, New York employs an "interest analysis," whereby "the law of the jurisdiction having the greatest interest in the litigation will be applied."  *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 384 (2d Cir. 2006) (quotation omitted).  In particular, where, as here, "conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders."  *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (N.Y. 1993).  This is true even where the alleged tortious conduct occurred in one state, but the plaintiff suffered injury in another state.  *See, e.g.*, *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270-71 (2d Cir. 1992) (even if plaintiff was injured in Connecticut, California's interest in regulating allegedly tortious conduct within its borders required application of California law); *Czech Beer Imps., Inc. v. C. Haven Imps., LLC*, No. 04 Civ. 2270(RCC), 2005 WL 1490097, at *5 (S.D.N.Y. June 22, 2005) (New York law applied where economic injury suffered in Connecticut because alleged tortious behavior committed in New York).

Here, this analysis dictates the application of New Jersey law.  The division of Mars responsible for M&M's® – the only Mars entity with which Plaintiff dealt – was based in New Jersey.  Am. Compl. ¶¶ 6, 9.  Indeed, Plaintiff claims she submitted her idea "via a telephone call forwarded to [Mars's] New Jersey office," *id.* ¶ 18, and that this unsolicited call gave rise to the "fiduciary relationship" required for her to state a misappropriation claim.  *See id.* ¶ 24; Section

---

[8] A choice of law analysis may likewise be required for Plaintiff's misappropriation claim because California, unlike New Jersey, does not recognize the tort of misappropriation of ideas. *See* Section IV.B, *infra*.  Ultimately, however, this claim fails under either jurisdiction's law.

IV.A, *infra*.  Although Plaintiff does not allege a specific locale from which Mars decided to proceed with the ads that allegedly used her idea, *id.* ¶ 29, neither does she claim Mars engaged in tortious conduct outside New Jersey (licensing the *Addams Family* characters and theme song from their lawful owners is not tortious conduct).  As such, there is no basis for concluding that this decision was made anywhere besides New Jersey.[9]  *See Ahlert v. Hasbro, Inc.*, 325 F. Supp. 2d 509, 512 (D.N.J. 2004) ("New Jersey clearly has the strongest connection to the case. [Defendant] is not only located in New Jersey, but Plaintiff's idea was submitted in New Jersey, and any alleged wrongdoing would have taken place there as well.").  Therefore, New Jersey's interest in regulating Mars's in-state conduct is paramount, and its law governs Plaintiff's misappropriation claim.

To be sure, some cases have held that tort claims are governed by the law of the state where the plaintiff was injured, which in this case may be California.  *See, e.g.*, *White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 460 F.3d 281, 284 (2d Cir. 2006) (New York law applied because, *inter alia*, "vast majority of the alleged harm occurred in New York").  This principle, however, "gives way when it is at war with state interests," *Simon v. Philip Morris Inc.*, 124 F. Supp. 2d 46, 58 (E.D.N.Y. 2000), or the need to avoid "uncertainty for litigants," *Cooney*, 81 N.Y.2d at 74 (quotation omitted).  Here, were California law to apply, Mars's conduct would be evaluated based on the law of any state in which an unsolicited caller happens to reside.  Not only would this deprive New Jersey of the ability to oversee corporate conduct within its borders, but it would create substantial uncertainty for Mars.  Mars cannot know in advance where cold callers reside and, were the law of that jurisdiction controlling, could not

---

[9] Plaintiff claims the ads themselves were produced and filmed in New York. Am. Compl. ¶ 31. But, her claims are based on the allegation that "Defendants produced, or caused to be produced" the ads in question.  *Id.* ¶ 29.  Plaintiff does not dispute that this occurred in New Jersey.

practicably formulate a response to such solicitations with knowledge of the governing legal standard. The unpredictability of this result dictates that New Jersey law applies. *See, e.g.*, *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 198 (N.Y. 1985) (choice of law rules exist, in substantial part, to "protect[]the reasonable expectations of the parties who relied on [the law of the place of the tort] to govern their primary conduct") (internal quotations omitted); *Cooney*, 81 N.Y.2d at 77-78 (same) (choice of law informed by parties' "reasonable expectations").

## II. PLAINTIFF CANNOT STATE A CLAIM FOR BREACH OF AN IMPLIED-IN-FACT CONTRACT.

### A. Motion to Dismiss Standard.

In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the Supreme Court refined the standard for deciding motions to dismiss for failure to state a claim. The Court adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original). Under this standard, a complaint must be dismissed if it fails to plead "enough facts to state a claim to relief that is plausible on its face," which requires more than "labels and conclusions, and a formulaic recitation of the elements of cause[s] of action." *Twombly*, 127 S. Ct. at 1965, 1974; *see also Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996) ("bald assertions and conclusions of law" insufficient to withstand motion to dismiss); *Berrian v. Pataki*, 510 F. Supp. 2d 348, 354 (S.D.N.Y. 2007) ("[B]ald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations and will not defeat a motion to dismiss.") (quotation omitted).

### B. Plaintiff Cannot Allege the Elements of An Implied-In-Fact Contract.

Under New Jersey law, the elements of an implied-in-fact contract are identical to those of an express contract. The only difference is that the parties' assent to an implied-in-fact

contract is "manifested by conduct instead of words." *Saint Barnabas Med. Ctr. v. Essex County*, 543 A.2d 34, 39 (N.J. 1988) (quotation omitted); *see also Baer v. Chase*, 392 F.3d 609, 616 (3d Cir. 2004) (distinguishing express from implied-in-fact contracts). Thus, to establish an implied-in-fact contract, Plaintiff must allege "mutual assent, consideration, legality of object, and capacity of the parties." *Duffy*, 123 F. Supp. 2d at 818 (citing *Cohn v. Fisher*, 287 A.2d 222, 224 (N.J. Super. Ct. Law Div. 1972)); *see also Nadel*, 208 F.3d at 376 n.5 (same). Here, Plaintiff's own allegations establish the absence of mutual assent and consideration, each of which is fatal to Plaintiff's claim.

### 1.    Plaintiff's Allegations Demonstrate No Mutual Assent.

For at least three reasons, Plaintiff cannot allege mutual assent. <u>First</u>, she concedes that Mars expressly declined to enter into any contract with her. *See* Am. Compl. ¶ 27 ("In or about August, 2006, Ms. O'Donnell conveyed to Plaintiff that [Mars] had declined to use her idea for a cross-promotion between *Addams Family* characters and M&M's<sup>®</sup> candies.") (italics added). This is fatal to her claim that the parties had a contract, implied-in-fact or otherwise, because "[t]he law will not imply a promise on the part of a person against his own express declaration." *Flemming v. Ronson Corp.*, 258 A.2d 153, 156 (N.J. Super Ct. Law Div. 1969); *see also Jennings v. Camp*, 13 Johns. 94 (N.Y. 1816) (quotation omitted) (same); *S. Jersey Hosp., Inc. v. Corr. Med. Servs.*, No. 02-2619 (JBS), 2005 WL 1410860, at *4 (D.N.J. June 15, 2005) ("'[Even] the rendering of a performance does not constitute an acceptance if within a reasonable time the offeree exercises reasonable diligence to notify the offeror of non-acceptance.'" (quoting Restatement (Second) Contracts § 53(2) (1981))).

<u>Second</u>, for mutual assent to exist, the essential terms of an alleged implied-in-fact contract must be sufficiently definite "to allow a court to determine with reasonable certainty

what each party has promised to do." *Baer*, 392 F.3d at 619 (citing *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992) and *W. Caldwell v. Caldwell*, 138 A.2d 402, 410 (N.J. 1958)). These essential terms include price and duration. *Id.* ("New Jersey law deems the price term, *i.e.*, the amount of compensation, an essential term of any contract. . . . Additionally, the duration of the contract is deemed an essential term and therefore any agreement must be sufficiently definitive to allow a court to determine the agreed upon length of the contractual relationship.").[10]

Here, Plaintiff acknowledges that the parties reached no agreement as to "essential expressed contract terms such as duration and price" (which is not surprising, given her concession that Mars rejected her proposal). Am. Compl. ¶ 42. Indeed, Plaintiff's amended complaint does not mention duration outside of paragraph 42. As to price, Plaintiff claims she had a subjective "belie[f] . . . that Defendants would fairly and reasonably compensate her if they used her idea." *Id.* ¶ 36. She does not claim the parties ***agreed*** that such compensation would be paid. *See id.* ¶ 35 (Mars "knew or should have known" Plaintiff expected compensation). Much less does she allege a meeting of the minds concerning the amount of compensation or any formula for determining it. The lack of any allegation that the parties agreed on price or duration is fatal to Plaintiff's implied-in-fact contract claim. *See Baer*, 392 F.3d at 620-21; *Bergin v. Century 21 Real Estate Corp.*, No. 98 Civ. 8075(JGK), 2000 WL 223833, at *5 (S.D.N.Y. Feb. 25, 2000) (under New Jersey law, "[t]he absence of any evidence, or even any allegation, that the parties reached any agreement as to the compensation the plaintiff would receive is fatal to a finding that there was a contract").

---

[10] Although the absence of a price term is not necessarily fatal if the parties specify "a practicable method by which they can determine the amount," *Baer*, 392 F.3d at 619, Plaintiff does not (and cannot) allege that the parties agreed on any such method.

Third, Mars did not use Plaintiff's idea. *See Duffy*, 123 F. Supp. 2d at 818-19 ("One aspect of the mutual assent element in an implied-in-fact contract claim involving use of a confidential submission is that the defendant used the idea. . . . Unless a plaintiff proves that defendant used the idea, a plaintiff will not be able to prove that a defendant agreed to pay for the idea."); *Bergin*, 2000 WL 223833, at **7-8 (rejecting implied-in-fact contract claim because, *inter alia*, defendant did not use plaintiff's idea). Plaintiff claims she proposed a Halloween cross-promotion involving her clients, animated M&M's®, and the *Addams Family* DVD. Am. Compl. ¶¶ 18, 19. But, she does not (and cannot) allege that Mars ever retained her clients, promoted the *Addams Family* DVD, or undertook any M&M's®-*Addams Family* DVD cross-promotion. Instead, Mars licensed the *Addams Family* characters and theme song from their lawful owners, and used them solely to advertise dark chocolate M&M's®. *Id.* ¶¶ 21, 32, 33. Mars's decision not to use Plaintiff's idea belies her claim that Mars assented to an implied-in-fact contract.

### 2.    Plaintiff Cannot Allege Consideration.

Nor does Plaintiff adequately allege that she provided consideration to Mars. In the submission of ideas context, the consideration required to support an implied-in-fact contract is the suggestion of an idea that is novel to the buyer. *See Nadel*, 208 F.3d at 376 n.5; *Duffy*, 123 F. Supp. 2d at 818 (citation omitted). The "determination of whether an idea is novel is a question of law for the court." *Duffy*, 123 F. Supp. 2d at 809; *see also id.* at 818 ("[A]n idea may be so lacking in novelty that, as a matter of law, the buyer is deemed to have knowledge of the idea." (citing *Nadel*, 208 F.3d at 380)).[11] For example, when an idea consists merely of "a clever or

---

[11] *See also Zikakis*, 2005 WL 2347852, at *3 (dismissing misappropriation claim because idea was not novel as a matter of law); *Johnson*, 788 A.2d at 919 ("Plaintiff's ideas may be viewed as so unoriginal that, as a matter of law, they were not novel as to the defendant.").

useful adaptation of existing knowledge," it is not novel.  *Baer*, 392 F.3d at 628-29 (quotation

omitted); *accord Nadel*, 208 F.3d at 378 (citations omitted); *Bergin*, 2000 WL 223833, at *9

(quotation omitted).  In making the novelty determination, the Court may consider:  "(1) the

idea's specificity or generality (is it a generic concept or one of specific application?), (2) the

idea's commonality (how many people know of this idea?), (3) the idea's originality (how

different is this idea from generally known ideas?), (4) the idea's commercial availability (how

widespread is the idea's use in the industry?), (5) the idea's obviousness (was the idea an

obvious adaptation or application of an idea already in the domain of public knowledge?), and

(6) the idea's secrecy (did an otherwise novel idea lose its novelty status because of inadequate

steps taken to maintain the idea's secrecy?)."  *Duffy*, 123 F. Supp. 2d at 810 (citing *Nadel*, 208

F.3d at 378).

      Here, Plaintiff's purported idea for a Halloween cross-promotion involving her clients,

animated M&M's®, and the *Addams Family* DVD contains none of the hallmarks that would

warrant a novelty finding.[12]  <u>First</u>, the idea is unoriginal.  By her own account, Plaintiff knew of

Mars's "past promot[ions of] its M&M's® products with movie releases and DVDs," Am.

Compl. ¶ 21, and simply proposed that Mars do the same for the particular DVD she was

promoting.  *Id.* ¶ 18.  This is like suggesting that McDonald's® cross-promote its Happy Meal®

---

[12] Plaintiff conclusorily recites that her idea was "novel . . . both in general and to Defendants." Am. Compl. ¶ 22.  This legal conclusion, which is undermined by Plaintiff's factual allegations, is insufficient to withstand a motion to dismiss.  *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) (on motion to dismiss, "[g]eneral, conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint"); *Berrian*, 510 F. Supp. 2d at 354 ("legal conclusions are not well-pleaded allegations and will not defeat a motion to dismiss"); *Bergin*, 2000 WL 223833, at *9 ("In establishing that an idea is novel, a plaintiff cannot rest on mere assertions, but must demonstrate some basis in fact for its claims."); *Oasis Music, Inc. v. 900 U.S.A., Inc.*, 161 Misc. 2d 627, 632 (N.Y. Sup. Ct. 1994) ("A plaintiff cannot rest on mere assertions of novelty and originality, but must, instead, demonstrate some basis for those [ideas].") (quotation omitted).

with the next upcoming Disney film (as opposed to the countless Disney films it has cross-promoted in the past).  If there is any creativity in this trivial adaptation of an existing idea, it is insufficient to establish novelty under New Jersey law.  *Compare Baer*, 392 F.3d at 628-29 (mere "variations and adaptations of existing knowledge in the public domain" are not novel (citing *Oasis Music*, 161 Misc. 2d at 631)) *and Bergin*, 2000 WL 223833, at *9 (same) *with* Am. Compl. ¶ 22 (Plaintiff took "existing materials from common sources and combined and arranged them into a new form, [giving] them a unique application in a different manner and for a different purpose than what previously existed").

Second, Plaintiff's alleged idea is completely generic, as it does not specify the promotion's medium, content, theme, or message.  A Halloween cross-promotion involving Plaintiff's clients, animated M&M's®, and the *Addams Family* DVD could use, at the very least, television, radio, internet, film, in-person promotions, or any combination thereof, and could involve live actors, product tie-ins (*e.g.*, fast-food restaurant promotions), candies shaped like *Addams Family* characters, cartoons, clips from the *Addams Family* television program, the *Addams Family* theme song (which Plaintiff does not claim to have suggested), or literally thousands of other possibilities.  Am. Compl. ¶¶ 18, 19.  Had Plaintiff proposed the dark chocolate M&M's® television commercials that Mars pursued, *see id.* ¶¶ 29-30, one would expect her to have submitted storyboards, descriptions of the advertisements, or some other concrete indication of the ads' nature and substance.  *See, e.g.*, *Duffy*, 123 F. Supp. 2d at 811 (idea's specificity favored novelty finding where plaintiff submitted prototype).  She does not claim to have done so.  The Court may find a lack of novelty based on the genericness of Plaintiff's alleged idea alone.  *See Johnson*, 788 A.2d at 915, 920 (no novelty where "details of

plaintiff's submission . . . consisted of generic elements that could be used in marketing any product").

Third, Plaintiff does not claim she requested that Mars treat her purported idea as confidential, that she labeled it as such, or that she took any other measure to preserve her alleged idea's confidentiality. *Cf. Duffy*, 123 F. Supp. 2d at 814 (plaintiff requested confidential treatment for proposal, which he marked "confidential" and "proprietary"). This failure likewise weighs against a novelty finding. *See id.* at 809 ("[A] once novel idea will lose its novelty status if the owner of the idea fails to take adequate steps to maintain the idea's secrecy."). Although Plaintiff conclusorily recites that her idea was "presented . . . to Defendants in confidence," Am. Compl. ¶ 24, she pleads no facts to support this allegation. Conclusory assertions, devoid of supporting factual allegations, are insufficient to withstand a motion to dismiss. *See Twombly*, 127 S. Ct. at 1965. Indeed, had Plaintiff requested confidentiality in writing, orally, or in any other form, or had Ms. O'Donnell or anyone else at Mars agreed to keep her alleged idea confidential, Plaintiff undoubtedly would have said so in her amended complaint, having been apprised of this deficiency in Defendants' initial motion to dismiss. *See* Docket #6 at 9-10. But, her amended complaint contains no such allegation. *Cf. Ahlert*, 325 F. Supp. 2d at 513 n.5 ("Plaintiff's submission to Defendants was governed by a signed agreement which discussed confidentiality of a submitted idea."); *Duffy*, 123 F. Supp. 2d at 814 (plaintiff either "discussed confidentiality with the recipient before submitting the materials, or marked the submission as 'proprietary and confidential'"). Instead she offers only the bare allegation that her idea was "presented . . . in confidence." Am. Compl. ¶ 24. That is exactly the kind of conclusory assertion, devoid of supporting factual allegations, that *Twombly* deems insufficient to withstand a motion to dismiss. *See* 127 S. Ct. at 1965.

Finally, the idea of a Halloween cross-promotion involving Plaintiff's clients, animated M&M's®, and the *Addams Family* DVD is common, commercially available, and obvious. Plaintiff concedes that the idea of using M&M's® to promote a DVD is "existing material from common sources." Am. Compl. ¶ 22. Likewise, *The Addams Family* is synonymous with Halloween in the same way champagne and noisemakers are associated with New Years Eve, or romantic images are connected with Valentine's Day.[13] As the amazon.com review for "*The Addams Family* – Volume One" DVD advertises: "'There's a touch of madness' in the Addams household, where 'every day is Halloween.'" Amazon.com Review of "Addams Family DVD – Volume One," *available at* http://www.amazon.com/Addams-Family-One-Arthur-Lubin/dp/B000HEZEYG (quoting line spoken by Gomez, *Addams Family* patriarch) (last visited May 27, 2008). Indeed, many of the *Addams Family* characters are monsters, and all of the characters are declared by the show's theme song to be "creepy," "kooky," "mysterious," and "spooky."[14] Discovery is not required to show the link between these images and Halloween.

---

[13] The Court may take judicial notice of the fact – which is "not subject to reasonable dispute," Fed. R. Evid. 201(b) – that the longstanding association between the Addams Family and Halloween was well-known to the entire television-watching world (including Mars) long before August 2006. *See Ty, Inc. v. GMA Accessories, Inc.*, 959 F. Supp. 936, 940 (N.D. Ill. 1997) ("[T]he court takes judicial notice of the several news articles submitted by Ty. The existence of these articles demonstrates that Beanie Babies are a widely-disseminated popular item."); *Fausto v. Diamond*, 589 F. Supp. 451, 462 (D.R.I. 1984) ("The court must take judicial notice, Fed. R. Evid. 201, that portrayals of a mother and child have been a popular subject of artists – even those of atheistic bent – for centuries."); *Am. Greetings Corp. v. Easter Unlimited, Inc.,* 579 F. Supp. 607, 613 (S.D.N.Y. 1983) ("judicial notice of the fact that the stuffed bear is among the most common of stuffed toys"); *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 500 n.1 (2d Cir. 1982) (judicial notice of "traditional features of a snowman"); *see also United States v. Ricciardi*, 357 F.2d 91, 97 (2d Cir. 1966) ("Judges are not necessarily to be ignorant in Court of what every one else, and they themselves out of Court, are familiar with.") (quotation omitted).

[14] The theme song's full lyrics are:

They're creepy and they're kooky,
Mysterious and spooky,

Moreover, both seasons of the original television series had episodes specifically devoted to Halloween:  *Halloween With The Addams Family* (1964) and *Halloween – Addams Style* (1965).  *See* Addams Family Episode Guide, *available at* http://epguides.com/AddamsFamily/ (last visited May 27, 2008).  In fact, *Halloween With The Addams Family* (1964) is contained on the "*Addams Family* DVD Volume 1."  *See* Amazon.com Review of "Addams Family DVD – Volume One," *available at* http://www.amazon.com/Addams-Family-One-Arthur-Lubin/dp/B000HEZEYG (last visited May 27, 2008).  And, when the show's creators sought to revive it in the late 1970s, they called their pilot *Halloween With The Addams Family* (1977).  *See* Addams Family Episode Guide, *available at* http://epguides.com/AddamsFamily/ (last visited May 27, 2008).  Moreover, dozens (if not hundreds) of albums of Halloween-themed music contain the *Addams Family* theme song, the lyrics of which are overtly evocative of Halloween.[15]  Were that not enough, a simple Google search for "Addams Family Halloween"

---

They're all together ooky,
The Addams Family.
Their house is a museum.
When people come to see 'em
They really are a screa-um.
The Addams Family.

Neat, Sweet, Petite

So get a witch's shawl on.
A broomstick you can crawl on.
We're gonna pay a call on
The Addams Family.

The Addams Family Theme Lyrics, *available at* http://www.lyricsondemand.com/tvthemes/theaddamsfamilylyrics.html (last visited May 27, 2008).

[15] *See, e.g.*, Amazon.com Listing for "The Complete Halloween Party Album," *available at* http://www.amazon.co.uk/Complete-Halloween-Party-Album/dp/B000VJVSQA/ref=pd_sim_m_h__img_8 (last visited May 27, 2008); Amazon.com Listing for "Halloween Hits," *available at* http://www.amazon.co.uk/Halloween-Hits-

reveals countless Halloween-themed *Addams Family* products, costumes, and paraphernalia.

For all of these reasons, Plaintiff's alleged idea for a Halloween cross-promotion involving her clients, animated M&M's®, and the *Addams Family* DVD is, at best, "nothing more than a variation on a basic theme" – not an idea that qualifies as novel. *Nadel*, 208 F.3d at 378 (citation omitted).

## III. PLAINTIFF CANNOT STATE A CLAIM FOR UNJUST ENRICHMENT.

Plaintiff's unjust enrichment claim fails for many of the same reasons. To establish unjust enrichment, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994) (citations omitted). "The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Id.* Moreover, to state an unjust enrichment claim in the submission-of-ideas context, Plaintiff must plead facts showing "(1) [her] idea was novel; (2) it was made in confidence; and (3) it was adopted and made use of." *Flemming*, 258 A.2d at 156-57; *Bergin*, 2000 WL 223833, at *9 (same). Plaintiff fails to meet this standard for at least four reasons.

---

Various/dp/B0000032GJ (last visited May 27, 2008); Amazon.com Listing for "Halloween Howls," *available at* http://www.amazon.co.uk/Halloween-Howls-Andrew-Gold/dp/B0000033VI/ref=pd_sim_m_h__img_4 (last visited May 27, 2008); Amazon.com Listing for "These Ghoulish Things: Horror Hits for Halloween," *available at* http://www.amazon.co.uk/These-Ghoulish-Things-Horror-Halloween/dp/B000A8SXN8/ref=pd_sim_m_h__title_1 (last visited May 27, 2008); Amazon.com Listing for "The Ultimate Halloween Party Album," *available at* http://www.amazon.co.uk/Ultimate-Halloween-Party-Album/dp/B000HT36DC/ref=pd_sim_m_h__img_7 (last visited May 27, 2008); Rhapsody.com Listing for "Kidz Bop Halloween – 'The Addams Family,'" *available at* http://www.rhapsody.com/kidzbopkids/kidzbophalloween/theaddamsfamily (last visited May 27, 2008).

First, she cannot show that Mars made use of the *Addams Family* characters and theme song "without payment." *VRG*, 641 A.2d at 526.  As Plaintiff acknowledges, Mars paid a substantial licensing fee to (1) the Tee and Charles Addams Foundation, which owns the legal rights to the characters used in their ads, Am. Compl. ¶ 33; and (2) Vic Mizzy, who owns the rights to the *Addams Family* theme song.  *Id.* ¶ 32.  Mars also hired New York advertising agency BBDO to produce these ads.  *Id.* ¶ 31.  Equity does not require that Mars make a second payment for these same benefits, especially to someone who lacked the legal capacity to provide them.  *See MBL Contracting Corp. v. King World Prods., Inc.*, 98 F. Supp. 2d 492, 495-96 (S.D.N.Y. 2000) (dismissing unjust enrichment claim that would result in defendant making duplicative payments for same benefit); *B & G Crane Serv., Inc. v. Dolphin Titan Int'l, Inc.*, 762 F.2d 1292, 1295 (5th Cir. 1985) (no unjust enrichment where defendant "had fully paid" for the property in question, and "did not receive anything it had not paid for," holding:  "We will not require [defendant] to pay twice for its [property]."); *Joest Vibratech, Inc. v. N. Star Steel Co.*, 109 F. Supp. 2d 746, 751 (N.D. Ohio 2000) (rejecting unjust enrichment claim because "[t]o require Defendant . . . to pay twice for materials delivered would work an injustice on [Defendant]").  Having paid substantial licensing fees for the rights to *The Addams Family* characters and theme song, Am. Compl. ¶¶ 32, 33, and having retained BBDO to produce its advertisements, *id.* ¶ 31, Mars obtained these benefits at no one's expense but its own.

Second, for the reasons set forth above, Plaintiff's alleged proposal lacks novelty as a matter of law.  *See* Section II.B.2, *supra*.  This too is fatal to her unjust enrichment claim.  *See Duffy*, 123 F. Supp. 2d at 815 ("New Jersey law does not impose an obligation on a defendant to

pay for use of an idea submitted to it in confidence unless the idea is novel."); *Bergin*, 2000 WL 223833, at **9-10 (same).[16]

      <u>Third</u>, as discussed in Section II.B.2, *supra*, Plaintiff does not plausibly allege that her idea was submitted in confidence. *See Flemming*, 258 A.2d at 157 (plaintiff claiming unjust enrichment must "establish as a prerequisite to relief that . . . the idea . . . was [submitted] in confidence"); *Johnson*, 788 A.2d at 914 (same). Absent a confidential submission, Plaintiff could have no "reasonable expectation of compensation" from Mars. *ABD Monroe, Inc. v. Monroe Tp.*, No. 04-1412 (WHW), 2008 WL 58876, at *13 (D.N.J. Jan. 3, 2008).

      <u>Finally</u>, Mars cannot have been unjustly enriched by the only idea that Plaintiff claims to have proposed – a cross-promotion involving her clients, animated M&M's®, and the *Addams Family* DVD – because it never used that idea. *See* section II.B.1, *supra*. As a matter of law, a party cannot be unjustly enriched by a benefit it did not accept. *See Flemming*, 258 A.2d at 157 (unjust enrichment requires that defendant "adopted and made use of" plaintiff's idea) (citations omitted); *Bergin*, 2000 WL 223833, at *10 (no unjust enrichment where "there is no evidence that [defendant] used the plaintiff's idea"); *Haskell v. Lever Bros. Co.*, 243 F. Supp. 601, 614 (S.D.N.Y. 1965) ("In view of the fact that . . . the defendant does not use, and has not disclosed, the configuration proposed by the plaintiff . . . the plaintiff is not entitled to recover damages

---

[16] Some case law suggests that "concreteness" is a separate element of an unjust enrichment claim in the submission-of-ideas context, as opposed to an issue to be considered in assessing novelty. *See Flemming*, 258 A.2d at 156 (defendant can be unjustly enriched only through the presentation of a "concrete" idea); *Radio Today, Inc. v. Westwood One, Inc.*, 684 F. Supp. 68, 72 (S.D.N.Y. 1988) ("[P]laintiffs' quasi-contract claim requires proof that a novel and concrete idea was appropriated . . . ."). Either way, Plaintiff's proposal was far from concrete. She does not allege its medium, theme, or message, nor does she claim to have submitted any tangible representation of the idea. As such, her conclusory assertions that her idea was "concrete," *see* Am. Compl. ¶¶ 18, 22, are another example of legal conclusions that are insufficient to withstand a motion to dismiss. *Berrian*, 510 F. Supp. 2d at 354; *see also Twombly*, 127 S. Ct. at 1965

under the charge of unjust enrichment.");[17] *Stephen Pevner, Inc. v. Ensler*, 309 A.D.2d 722, 723 (1st Dep't 2003) (rejecting unjust enrichment claim, which "rel[ied] on a single writing by defendant recognizing plaintiff's right to some payment for a single book publishing agreement" because "that publication never took place, and no revenue was ever generated from that agreement, [and thus] defendant received no benefit from plaintiff's services" (citing *Martin H. Bauman Assocs., Inc. v. H & M Int'l Transp., Inc.*, 171 A.D.2d 479, 484 (1st Dep't 1991))).

## IV.    PLAINTIFF CANNOT STATE A CLAIM FOR MISAPPROPRIATION OF IDEAS.

Although she does not devote a separate count of her amended complaint to a "misappropriation of ideas" claim, Plaintiff has relabeled Count II as: "Unjust enrichment/ Misappropriation of Idea." Am. Compl. at 9. As set forth above, the parties appear to dispute whether this Count is governed by the law of New Jersey or California. Ultimately, however, Plaintiff fails to state a misappropriation claim under the law of either jurisdiction.

### A.    Plaintiff Fails to State a Misappropriation of Ideas Claim Under New Jersey Law.

Under New Jersey law, the elements of tortious misappropriation of ideas mirror those of unjust enrichment. *See Duffy*, 123 F. Supp. 2d at 808 (to establish misappropriation, Plaintiff must also show that "1) the idea was novel;[18] 2) the disclosure was made in confidence; and 3) the Defendant adopted and made use of the information" (quoting *Flemming*, 258 A.2d at 156));

---

("labels and conclusions, and a formulaic recitation of the elements of cause[s] of action" cannot defeat motion to dismiss).

[17] "New Jersey courts have looked to the law of other states, including New York, in developing the law of quasi-contract." *Bergin*, 2000 WL 223833, at *9 n.1 (citing *Flemming*, 258 A.2d at 156-57).

[18] In the tort context, the "novelty" requirement means novelty "in absolute terms." *Nadel*, 208 F.3d at 378.

*see also Johnson*, 788 A.2d at 906 (same).  As fully set forth in section III, *supra*, none of these elements are satisfied here.  Standing alone, Plaintiff's inability to plead facts that would satisfy these criteria is fatal to her misappropriation claim.

Moreover, to state a misappropriation of ideas claim under New Jersey law, Plaintiff must allege facts showing "'a contractual or fiduciary relationship between the parties.'"  *Duffy*, 123 F. Supp. 2d at 808 (quoting *Flemming*, 258 A.2d at 156).  Although *Duffy* notes that the foregoing three-factor test applies to "'unsolicited submissions,'" *id.* (quoting *Flemming*, 258 A.2d at 156), it is far from clear that an unsolicited idea submission, without a prior relationship or further dealings between the parties, can give rise to a fiduciary relationship.[19]  In New Jersey, "[a] fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship." *McKelvey v. Pierce*, 800 A.2d 840, 859 (N.J. 2002) (quotation omitted).  Importantly, for fiduciary duties to exist, the parties' relationship must be "consensual in the sense that [they] must voluntarily enter a relationship having the stipulated characteristics."  *Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Secs., Inc.*, 93 F.3d 1171, 1183 (3d Cir. 1996); *see also United States v. Falcone*, 257 F.3d 226, 234 (2d Cir. 2001) ("'a fiduciary duty cannot be imposed unilaterally by entrusting a person with confidential information,' . . . a fiduciary relationship, or its functional equivalent, exists only where there is explicit acceptance of a duty of confidentiality or where such acceptance may be implied from a similar relationship of trust and confidence between the parties" (quoting *United States v. Chestman*, 947 F.2d 551, 567 (2d Cir. 1991))).  Such consent obviously is lacking where the party alleged to have a fiduciary duty was not afforded an opportunity to decline the relationship.

Here, Plaintiff does not claim that at the time of her unsolicited cold call the parties had any relationship at all, much less that Mars was her fiduciary. Nor does she claim that subsequent events created a fiduciary relationship. Instead, she asserts that such a relationship was created the moment Claire O'Donnell answered Plaintiff's call because "the parties did not deal on equal terms and, indeed, Plaintiff trusted and relied on Ms. O'Donnell[] and Defendants[] to protect her interests . . . ."[20] Am. Compl. ¶ 24. But, absent an unrealistic policy of never answering the phone, Mars could not have declined this "relationship." *See generally Tele-Count Eng'rs, Inc. v. P. Tel. & Tel. Co.*, 168 Cal. App. 3d 455, 465 (Cal. Ct. App. 1985) (in context of "breach of confidence" claim, no confidential relationship absent opportunity for defendant to reject same) (citations omitted). Accordingly, "the mere voluntary act of submitting an idea to one with whom the plaintiff has had no prior dealings will not make the disclosure one in confidence, even if stated to be so."[21] *Hogan v. DC Comics*, No. 96-CV-1749, 1997 WL 570871, at *5 (N.D.N.Y. Sept. 9, 1997) (citation omitted). Indeed, in articulating the "equal terms/reliance" standard for fiduciary relationships – which she draws from New York law, *see Sachs*, 265 A.D. at 500 – Plaintiff fails to mention the counterveiling principle that "[p]arties dealing at arm's length . . . are not in a confidential relationship." *Id.* Here, Mars was in nothing more than a fleeting, arm's length relationship with Plaintiff from which no fiduciary duties

---

[19] No contractual or quasi-contractual relationship existed between the parties for the reasons set forth in Sections II and III, *supra*.

[20] Although Plaintiff also claims she was not represented by counsel in her dealings with Mars, *see* Am Compl. ¶ 25, neither was Mars, *id.* ¶ 18 (Plaintiff conveyed idea to Claire O'Donnell, a marketing representative).

[21] Under New York law, a "confidential relationship is synonymous with [a] fiduciary relationship." *Sachs v. Cluett, Peabody & Co.*, 265 A.D. 497, 500 (N.Y.A.D. 1st Dep't 1944).

flowed.  For this reason as well, Plaintiff cannot state a misappropriation claim.  *See Duffy*, 123 F. Supp. 2d at 808.

**B.      Plaintiff Fails to State a Misappropriation of Ideas Claim Under California Law.**

California law yields the same result, as it does not recognize a cause of action for misappropriation of ideas.  "Under California law, . . . misappropriation . . . claims are actionable only to vindicate legally protected property interests, and an idea is not recognized as a property right . . . .  Recovery for the appropriation of an idea, therefore, may be had only on a contractual theory."  *Whitfield v. Lear*, 751 F.2d 90, 92 (2d Cir. 1984) (citations omitted); *see also Flaherty v. Filardi*, No. 03 Civ. 2167(LTS)(HBP), 2007 WL 2734633, at *7 (S.D.N.Y. Sept. 19, 2007) (same); *Donahue v. Ziv Television Programs, Inc.*, 245 Cal. App. 2d 593, 605 (Cal. Ct. App. 1966) ("Recovery for the use of an idea must be based either on an express or an implied-in-fact contract."); *Desny v. Wilder*, 299 P.2d 257, 265 (Cal. 1956) (idea for a movie not protectible property because "California does not now accord individual property type protection to abstract ideas"); *Weitzenkorn v. Lesser*,  256 P.2d 947, 956 (Cal. 1953) ("The idea alone, the bare, undeveloped story situation or theme, is not protectible.").

Even were ideas protectible as property – as would be necessary to state a "misappropriation of ideas" claim, *see Whitfield*, 751 F.2d at 92 – Plaintiff could not show misappropriation under California law.  The elements of such a claim outside the submission of ideas context are:  "(1) the plaintiff has made a substantial investment of time, effort and money into creating the thing misappropriated, such that the court can characterize the 'thing' as a kind of property right; (2) the defendant has appropriated the 'thing' at little or no cost, such that the court can characterize defendant's actions as 'reaping where it has not sown'; and (3) the defendant has injured plaintiff by the misappropriation."  *Hollywood Screentest of Am., Inc. v.*

*NBC Universal, Inc.*, 60 Cal. Rptr. 3d 279, 293-94 (Cal. Ct. App. 2007) (internal citations omitted).[22]  Here, Plaintiff did not remotely make a "substantial investment of time, money, or effort in developing her idea."  *Id.*  To the contrary, she claims she took "existing material from common sources," Am. Compl. ¶ 22, *i.e.*, Mars's "past promot[ions of] its M&M's® products with movie releases and DVDs," *id.* ¶ 21, and asked Mars to do the same for the particular DVD she allegedly was promoting, *see id.* ¶ 18 (Plaintiff allegedly pitched cross-promotion of "M&M's® candies and *Addams Family* DVD").  Plaintiff does not plead any facts suggesting that she invested a single dollar or more than a moment's spontaneous thought "developing" this idea.  Likewise, Plaintiff's allegations show that Mars did not misappropriate her purported idea at little or no cost.  Instead, Mars licensed the *Addams Family* characters from the Tee and Charles Addams Foundation, *id.* ¶ 33, licensed the *Addams Family* theme song from Vic Mizzy, *id.* ¶ 32, and hired BBDO to produce the commercials that allegedly used her idea, *id.* ¶ 31.  These expenditures were substantial, and Mars therefore cannot be accused of "reaping where it has not sown."  *Hollywood Screentest*, 60 Cal. Rptr. 3d at 293.  Nor, given Plaintiff's lack of a property right in her alleged idea, does she allege a cognizable injury.  *See id.* (injury must be caused "by the misappropriation").

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) should be granted.

---

[22] The *Hollywood Screentest* court made clear that it was not recognizing ideas as property.  151 Cal. App. 4th at 650, n.10.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 30th day of May, 2008, I caused true and correct copies of

Defendants' Notice of Motion and Memorandum of Law in Support of Motion to Dismiss

Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) to be served electronically via the

Court's ECF system on the following counsel:


Kevin Thomas Mulhearn
Kevin T. Mulhearn, P.C.
60 Dutch Hill Road
Suite 8
Orangeburg, NY 10962
(845) 398-0361
(845) 398-3836
Email: kmulhearn@ktmlaw.net

*Attorney for Plaintiffs*



_____/s/_____
Katherine G. Lindsey (KL-0902)