UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
BONNIE VENT, d/b/a GENESIS CREATIONS,


                Plaintiff,

                                                   Civil Action No.
                                                   7:08-cv-02538-SCR

      - against -

                                                     (ECF)

MARS SNACKFOOD US, LLC (Formerly known as
MASTERFOODS USA, INC.) and
MARS, INCORPORATED,

                Defendants.
-------------------------------------------------------------------X


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT, PURSUANT TO FED R. CIV. P. 12(b)(6).


Dated: June 20, 2008
        Orangeburg, New York

                              Respectfully submitted,

                              KEVIN T. MULHEARN, P.C.

                              *Attorneys for Plaintiff*

                              60 Dutch Hill Road, Suite 8
                              Orangeburg, New York 10962
                              Phone: (845) 398-0361
                              Fax:   (845) 398-3836
                              Email: kmulhearn@ktmlaw.net

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES                                    ii

I.     STANDARD OF REVIEW.                              2

II.    NEW JERSEY LAW GOVERNS PLAINTIFF'S CLAIMS.       4

III.   THE AMENDED COMPLAINT STATES A
       CLAIM FOR MISAPPROPRIATION OF AN IDEA.           5

       1.   Plaintiff's Cross-Marketing Proposal Does
            Not Lack Novelty as a Matter of Law.        12

       2.   Defendants Cannot Establish, As a Matter of
            Law, That Plaintiff's Disclosure to Defendants
            Was Not Made in Confidence.                 18

       3.   Defendants Cannot Establish, As a Matter
            of Law, That Defendants Did Not Adopt and/or
            Use Plaintiff's Proposed Cross-Marketing Idea.   20

# TABLE OF AUTHORITIES

**PAGES**

## CASES:

*Baer v. Chase*, 392 F.3d 609 (3rd Cir. (N.J.) 2004).    5-6

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007).    3

*Bergin v. Century 21 Real Estate Corp.*, 2000 WL 223833
    (SDNY 2000), aff'd, 234 F.3d 1261 (2nd Cir. 2000) (table).    6

*Baut v. Pethick Constr. Co.*, 262 F. Supp. 350 (M.D. Pa. 1966).    16

*Cooper v. Parsky*, 140 F.3d 433 (2d Cir. 1998).    2

*De Filippis v. Chrysler Corp.*, 53 F. Supp. 977 (SDNY 1944),
    aff'd, 159 F.2d 478 (2nd Cir. 1947).    6

*Duffy v. Charles Schwab & Co.,*
    123 F. Supp. 2d 802 (D.N.J. 2001).    5-6, 12, 20-22

*Duffy v. Charles Schwab & Co.*, 2001 WL 1104689 (D.N.J. 2001).    14

*Flemming v. Ronson Corp.*, 258 A.D.2d 759 (1971).    5, 17, 22

*Gilbert v. Seton Hall Univ.*, 332 F.3d 105 (2d Cir. 2003).    4

*Harris v. City of N.Y.*, 186 F.3d 243 (2d Cir.1999).    2

*Hishon v. King & Spaulding*, 467 U.S. 69 (1984).    2

*Hollin v. Scholastic Corp. (In re Scholastic Corp. Sec. Litig.),*
    252 F.3d 63 (2d Cir.2001).    2

*In re Elsinore Shore Assocs.*, 102 B.R. 958 (Bktcy. D.N.J. 1989).    16, 19

**PAGES**

## CASES:

*McGhan v. Ebersol*, 608 F. Supp. 277 (SDNY 1985).            19

*Nadel v. Play-by-Play Toys & Novelties, Inc.*,
    208 F.3d 368 (2d Cir. (NY) 2000).            12-13

*Reiling Assocs. & Design Innovation, Inc. v. Fisher-Price, Inc.*,
    406 F. Supp.2d 175 (D. Conn. 2005).            13, 20

*Riese v. QVC, Inc.*, 1999 WL 178545 (E.D.Pa. 1999).            13

*Scholastic, Inc. v. Stouffer*, 124 F. Supp.2d 836, 841 (SDNY 2000).            2-3

*Trans World Technologies, Inc. v. Raytheon Co.*,
    207 WL 3243941 (D.N.J. 2007).            20, 22

*Walsh v. McGee*, 918 F.Supp. 107 (SDNY 1996).            3

*Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446 (6th Cir. 2001).            14

*Yoder v. Orthomolecular Nutrition Inst., Inc.*,
    751 F.2d 555 (2d Cir.1986).            2

## STATUTES & TREATISES:

*Federal Rule 12(b)(6) of Federal Rules of Civil Procedure*            2-3

*Restatement Third of Unfair Competition §40, cmt. a*            5

*Restatement Third of Unfair Competition §40, cmt. c*            21

Plaintiff, Bonnie Vent, by and through her attorneys, Kevin T. Mulhearn, P.C., hereby submits the following memorandum of law in opposition to Defendants' motion to dismiss the Amended Complaint in this action.

## I.     STANDARD OF REVIEW.

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss the Complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984) (citations omitted); see also, *Hollin v. Scholastic Corp. (In re Scholastic Corp. Sec. Litig.)*, 252 F.3d 63, 69 (2d Cir.2001). "The task of the Court in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998) (internal quotation omitted). Thus, to properly rule on such a motion, the court must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the non-movant's favor. See *Harris v. City of N.Y.*, 186 F.3d 243, 247 (2d Cir.1999). The complaint must be read "as a whole" in determining whether it states a claim for which relief maybe granted. See *Yoder v. Orthomolecular Nutrition Inst., Inc.*, 751 F.2d 555, 562 (2d Cir.1986); *Scholastic, Inc. v. Stouffer*, 124 F. Supp.2d 836,

2

841 (SDNY 2000).  Motions to dismiss are generally viewed with disfavor.  See

_Walsh v. McGee_, 918 F.Supp. 107 (SDNY 1996).

Defendants cite _Bell Atlantic Corp. v. Twombly_, 127 S.Ct. 1955 (2007) in

support of its argument that a complaint must be dismissed if it fails to plead

"enough facts to state a claim to relief that is plausible on its face" and relies only

upon "labels and conclusions, and a formulaic recitation of the elements of

cause[s] of action."  (Defendants' Brief at p. 9; citing, _Twombly_, 127 S.Ct. at

1965).

_Twombly_ also provides, however, that "a complaint attacked by a Rule

12(b)(6) motion to dismiss does not need detailed factual allegations" and that

Rule 12(b)(6) does not countenance dismissal based on a judge's subjective belief

that actual proof of the pleaded facts is improbable.  _Id._  The Supreme Court,

indeed, mandated in _Twombly_ that a complaint should survive a motion to dismiss

as long as it contains "enough fact to raise a reasonable expectation that discovery

will reveal evidence" of the pleaded claim.  _Id._

In any event, Defendants' motion to dismiss relies upon a false premise.  In

the case at bar, the Amended Complaint contains ample facts, not merely

conclusions, to support Plaintiff's  unjust enrichment/misappropriation of ideas

claim against Defendants.  Defendants seek to impose upon Plaintiff a far more

3

stringent requirement for pleading a claim than is recognized by federal law. This Court should not countenance Defendants' effort to defeat Plaintiffs' unjust enrichment/misappropriation claim prior to the discovery in this action that will illuminate this already well-pleaded claim.

## II.    NEW JERSEY LAW GOVERNS PLAINTIFF'S CLAIMS.

A federal court exercising diversity jurisdiction must apply the choice of law analysis of the forum state. *Gilbert v. Seton Hall Univ.*, 332 F.3d 105, 109 (2d Cir. 2003). Here, the forum state is New York, and Plaintiff acknowledges that New York's choice-of-law rules apply.

Plaintiff also now acknowledges that a proper choice of law analysis mandates that New Jersey law controls her pleaded claims. Accordingly, because Plaintiff does not and cannot claim that a meeting of the minds on the essential terms of the alleged contractual agreement with Defendants (i.e., price and duration) ever took place, Plaintiff's first pleaded claim for breach of an implied-in-fact contract is no longer viable, and is hereby withdrawn.

4

## III.    THE AMENDED COMPLAINT STATES A
## CLAIM FOR MISAPPROPRIATION OF AN IDEA.

The claim for "misappropriation" in the submission-of-ideas context is

"based on tort principles rather than on contract law." *Baer v. Chase*, 392 F.3d

609, 627 (3rd Cir. (N.J.) 2004) (citing, *Restatement Third of Unfair Competition*

§40, cmt. a). "The premise behind the tort is that when a party misappropriates

another's confidential idea or some other type of property, the law imposes an

obligation on that party to pay the other restitution for its improper use." *Id.,*

citing, *Duffy v. Charles Schwab & Co., Inc.,* 123 F. Supp. 2d 802, 808 (D.N.J.

2001).[1]

The leading precedent on the misappropriation of ideas in New Jersey,

*Flemming v. Ronson Corp.,* 258 A.D.2d 759 (1971), articulated the test for

determining whether the law will imply an obligation to pay for a confidentially

submitted idea: When "a person communicates a novel idea to another with the

intention that the latter may use the idea and compensate him for such use, the

other party is liable for such use and must pay compensation if . . . (1) the idea was

novel; (2) it was made in confidence [to the defendant]; and; (3) it was adopted

---

[1]Plaintiff's claim may likewise be labeled "unjust enrichment." The designation of the
claim is of small import, as – under New Jersey law – the elements needed to prove each claim
are identical. Unjust enrichment is, however, a quasi-contract claim, while misappropriation of
ideas sounds in tort.

and made use of [by the defendant in connection with his own activities]." *Id.* at 156-57 (citing, *inter alia*, *De Filippis v. Chrysler Corp.*, 53 F. Supp. 977 (SDNY 1944), aff'd, 159 F.2d 478 (2nd Cir. 1947)); see also *Baer*, 392 F.3d at 627; *Duffy*, 123 F. Supp. 2d at 808; *Bergin v. Century 21 Real Estate Corp.*, 2000 WL 223833, *9 (SDNY 2000), aff'd, 234 F.3d 1261 (2nd Cir. 2000) (table).

Here, the Amended Complaint pleads – at length – each of the requisite elements of misappropriation in the submission-of-ideas context:

*A NOVEL IDEA*

*Shortly thereafter, in August, 2006, Plaintiff, while in California, contacted Claire O'Donnell, Senior Marketing Buyer of Defendant MASTERFOODS, via a telephone call forwarded to MASTERFOODS' New Jersey office, and submitted and pitched a specific, novel, and concrete idea for a cross-promotion between Addams Family characters and M&M's candies for Halloween. The idea conveyed by Plaintiff to Ms. O'Donnell specifically mentioned the use of animated M&M's characters with Addams Family characters' for a cross-promotion of the two products (M&M's candies and Addams Family DVD).*

(Am. Comp., para. 18; emphasis added).

*Plaintiff also conveyed to Ms. O'Donnell that she would offer her Addams*

6

> *Family clients – Lisa Loring (Wednesday), Ken Weatherwax (Pugsley) and*
>
> *Felix Silla (Cousin Itt) – to help with this cross-promotion between Addams*
>
> *Family characters and M&M's animated candy characters.*

(Am. Comp., para. 19).

> *Plaintiff's aforesaid idea to do a cross-promotion with Addams Family*
>
> *characters and M&M's animated candy characters was novel and concrete,*
>
> *both in general and to Defendants (i.e., was novel to Defendants), in that:*
>
> > *(1) The idea was not in use in the entertainment or advertising*
> >
> > *industries at the time Plaintiff submitted her idea; (2) Defendants had*
> >
> > *never already used said idea at the time Plaintiff submitted her idea;*
> >
> > *(3) Plaintiff's aforesaid idea showed genuine novelty and invention,*
> >
> > *and was not merely a clever or useful adaptation of existing*
> >
> > *knowledge; (4) the idea was definite and well-developed (i.e., the*
> >
> > *specific use of M&M's animated characters with Addams Family*
> >
> > *characters); and (5) Plaintiff had taken existing material from*
> >
> > *common sources and combined and arranged them into a new form,*
> >
> > *and gave them a unique application in a different manner and for a*
> >
> > *different purpose than what previously existed.*

(Am. Comp., para. 22).

### *MADE IN CONFIDENCE*

*Plaintiff, prior to August, 2006, had previously pitched a marketing idea to*

*Claire O'Donnell, a Senior Media Buyer of Defendant MASTERFOODS.*

(Am. Comp., para. 16).

*At the time Plaintiff pitched her idea to Claire O'Donnell, as an employee*

*and/or agent of Defendants MASTERFOODS and MARS, a confidential or*

*fiduciary relationship existed between the parties, because the parties did*

*not deal on equal terms, and, indeed, Plaintiff trusted and relied on Ms.*

*O'Donnell, and Defendants, to protect her interests with respect to her*

*aforesaid marketing idea.  Plaintiff, moreover, presented her idea to*

*Defendants in confidence.*

(Am. Comp., para. 24).

*Plaintiff, at the time she submitted and pitched her idea to Ms. O'Donnell,*

*was not represented by counsel or any third party with respect to her idea.*

*Defendants owed Plaintiff fiduciary duties, derived from the aforesaid*

*fiduciary or confidential relationship, to act in good faith to protect*

*Plaintiff's interests.*

(Am. Comp., para. 25).

8

> *In or about August, 2006, Ms. O'Donnell conveyed to Plaintiff that*
>
> *Defendants MASTERFOODS and MARS had declined to use her idea for a*
>
> *cross-promotion between Addams Family characters and M&M's candies.*
>
> *After Plaintiff viewed the Addams Family/M&M's commercials on*
>
> *television in or about April, 2007, however, she telephoned Claire*
>
> *O'Donnell. Ms. O'Donnell then told Plaintiff that she had liked the idea*
>
> *and pitched it to her management, but had no idea where it went from there.*

(Am. Comp., para. 27).

> *At no time, did Defendants pay Plaintiff any remuneration or compensation*
>
> *for Plaintiff's aforesaid idea.*

(Am. Comp., para. 28).

### *USED OR ADOPTED BY DEFENDANTS*

> *In or about April, 2007, however, upon information and belief, Defendants*
>
> *produced, or caused to be produced, several advertisements which used and*
>
> *adopted Plaintiff's aforesaid idea to cross-promote Addams Family*
>
> *characters with M&M's candies (in particular, M&M's animated*
>
> *characters).*

(Am. Comp., para. 29).

9

> *Specifically, said advertisements featured M&M's chocolate candy animated characters transmogrified to resemble the cast of the classic televison program, The Addams Family, and featured the famous Addams Family theme song, complete with finger snaps. These commercials used Plaintiff's idea, as conveyed to Defendants, to promote M&M's candies by using Addams Family characters and M&M's animated candy characters.*

(Am. Comp., para. 30).

> *At the time Plaintiff submitted her aforesaid idea to Ms. O'Donnell, Ms. O'Donnell and Defendants could have refused to accept Plaintiff's submission – but chose, instead, to accept it.*

(Am. Comp., para. 38).

> *Defendants . . . did in fact use Plaintiff's aforesaid idea in an extensive and widely circulated advertising campaign for M&M's candies.*

(Am. Comp., para. 46).

> *Defendants, by such acts and omissions, also violated their fiduciary obligations owed to Plaintiff by reason of the aforesaid fiduciary or confidential relationship between the parties.*

(Am. Comp., para. 49).

> *By reason of the aforesaid, Defendants, by permitting Plaintiff to submit*

10

> *and pitch her idea for a cross-promotion between Addams Family*
>
> *characters and M&M's animated candy characters, accepted the aforesaid*
>
> *services rendered by Plaintiff.*

(Am. Comp., para. 53).

> *By reason of the aforesaid, Defendants benefitted substantially from the*
>
> *receipt of said services rendered by Plaintiff and improperly and illegally*
>
> *misappropriated the aforesaid idea developed by Plaintiff and conveyed by*
>
> *Plaintiff to Defendants.*

(Am. Comp., para. 55).

> *Upon information and belief, the advertisements which used Plaintiff's idea*
>
> *for a cross-promotion between Addams Family characters and M&M's*
>
> *animated candy characters were extremely well-received in the targeted*
>
> *sales markets, and generated millions of dollars in sales and revenue for*
>
> *Defendants.*

(Am. Comp., para. 60).

Defendants, nonetheless, argue that Plaintiff fails to meet all three elements
of the tort of misappropriation.  (Defendants' Brief at pp. 12-23).  Defendants
grossly misinterpret and misconstrue the law, particularly at the Rule 12(b)(6)
stage, with respect to each prong of the misappropriation analysis.

1.    **Plaintiff's Cross-Marketing Proposal Does
Not Lack Novelty as a Matter of Law.**

In *Duffy v. Charles Schwab & Co.*, 123 F. Supp. 2d 802 (D.N.J. 2000), the

New Jersey District Court – on a summary judgment motion – examined as a

threshold matter whether the issue of novelty is "an issue of fact, for the fact

finder, a question of law, for the jury, or a mixed question of law and fact." *Id.* at

808.  The *Duffy* Court held that the New Jersey Supreme Court would determine

that although some of the factors relevant to a determination of novelty may be

factual, the ultimate determination of whether an idea is novel is a question of law

for the court.  *Id.* at 809.[2]

The *Duffy* Court further stated factors relevant to a determination of novelty

might include the following: "(1) the idea's specificity or generality (is it a generic

concept or one of specific application), (2) the idea's commonality (how many

people know of this idea?), (3) the idea's originality (how different is this idea

from generally known ideas?), (4) the idea's commercial availability (how

widespread is the idea's use in the industry?), (5) the idea's obviousness (was the

idea an adaption or application of an idea already in the domain of public

knowledge?), and (6) the idea's secrecy (did an otherwise novel idea lose its

---

[2]The *Duffy* Court also relied heavily on *Nadel v. Play-by-Play Toys & Novelties, Inc.*, 208 F.3d 368 (2d Cir. (NY) 2000)(applying New York law), in interpreting New Jersey law as to whether an idea was novel in the misappropriation context. *Duffy*, 123 F. Supp. 2d at 808-10.

novelty status because of inadequate steps taken to maintain the idea's secrecy?).

*Id.* at 810 (citing, *Nadel v. Play-by-Play Toys & Novelties, Inc.*, 208 F.3d 368, 378

(2d Cir. (NY) 2000).

As these issues – individually and in aggregate –  are so fact-intensive, the

Second Circuit has noted that it is only appropriate to resolve novelty as a matter

of law in cases where "an idea [is] so unoriginal or lacking in novelty that its

obviousness bespeaks widespread and public knowledge of the idea." *Nadel*, 208

F.3d at 378-79 (Second Circuit reversed district court and found that plaintiff's

idea – a plush toy that sits upright, emits sounds, and spins on a flat surface by

means of a motor – raised a genuine issue of material fact as to whether it was

sufficiently novel and original to sustain plaintiff's misappropriation of an idea

claim).

Numerous other courts have similarly declined to rule on the "novelty"

element of misappropriation as a matter of law, even after discovery has been

completed (on summary judgment motions).  See *Reiling Assocs. & Design*

*Innovation, Inc. v. Fisher-Price, Inc.*, 406 F. Supp.2d 175, 190-92 (D. Conn.

2005)(New York law; genuine issue of material fact as to novelty existed on

misappropriation claim by toy development company and design firm against toy

manufacturer); *Riese v. QVC, Inc.*, 1999 WL 178545, *2-4 (E.D.Pa.

1999)(Plaintiff pitched QVC the idea for a weekly television program entitled "Best of the U.S.A." but was told by QVC that they would not use his idea. The following year QVC aired a weekly program entitled "Quest for America's Best". District Court found that the issue of novelty and uniqueness should be presented to a jury, as a reasonable fact-finder could conclude that "many core features [of defendant's program were] substantially similar and copied from [plaintiff's proposal.]"); *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 459-60 (6th Cir. 2001)(holding that circumstantial evidence of similarities between ideas were sufficient to preclude summary judgment despite direct evidence of independent creation and no direct evidence of defendant's use of plaintiff's idea): *Duffy v. Charles Schwab & Co.*, 2001 WL 1104689, *7 (D.N.J. 2001)(plaintiff's marketing ideas claim regarding mutual funds survived summary judgment motion as court did not find as a matter of law that plaintiffs' marketing ideas were not novel or that defendant did not use plaintiff's marketing ideas to improve its reports).

Here, the Amended Complaint states that Plaintiff submitted and pitched a specific, novel, and concrete idea for a cross-promotion between Addams Family characters and M&M's animated candy characters:

> *The idea conveyed by Plaintiff to Ms. O'Donnell specifically mentioned the use of animated M&M's characters with Addams Family characters for a*

14

*cross-promotion of the two products (M&M's candies and Addams Family*

*DVD).*

(Am. Comp., para. 18; emphasis added).

The Amended Complaint amplifies this allegation with the averment that:

*Defendants proceeded, shortly thereafter, to produce and release*

*advertisements which featured M&M's chocolate candy animated*

*characters transmogrified to resemble the cast of the classic televison*

*program, The Addams Family . . .*

(Am. Comp., para. 30).

To date, there has been no discovery, or evidence presented, on the following issues relevant to the novelty determination:   (1) what evidence, if any, exists as to Defendants' alleged independent creation of the Addams Family characters/M & M's candy characters commercials and/or advertisements?; (2) how many core features of Defendants' advertisements or commercials were substantially similar and copied from Plaintiff's proposal?; (3) how many people, if any, knew of Plaintiff's idea prior to her submission?; (4) how many similar cross-marketing ideas, if any, exist with respect to characters from classic television programs?; (5) did the supervisors to whom Claire O'Donnell presented Plaintiff's idea (see Amended Comp., para. 27) have any role or input in the

15

development or production of the Addams Family/M & M's advertisements and commercials that were eventually released to the public?

Each of these questions, as yet unanswered, weighs heavily on the Court's ultimate "novelty" determination. These questions demonstrate, moreover, that the Court's decision on this issue in response to Defendants' pending motion to dismiss would be grossly premature and clearly erroneous.

The mere fact that Plaintiff's idea embodied elements long in use does not preclude a finding of originality or novelty. *Baut v. Pethick Constr. Co.*, 262 F. Supp. 350, 361 (M.D. Pa. 1966). To the contrary, "the law has never considered it necessary for the establishment of property rights [i.e., in a misappropriation claim] in intellectual or artistic productions that the entire ultimate product should be the work of a single creator; such rights may be acquired by one who . . . substantially adds to [the original work] in some manner." *In re Elsinore Shore Assocs.*, 102 B.R. 958, 970 (Bktcy. D.N.J. 1989)(citing, *inter alia*, *Baut*, 262 F. Supp. at 361 (for example, a person who arranged the score of an opera for the pianoforte created an independent musical composition in which he had property rights separate from the composer of the opera itself; the translation of a novel, or its dramatization, vests a distinct property right which is entitled to the same protection as is extended to the original).

16

Applying New Jersey law on the misappropriation of ideas, the New Jersey Supreme Court in *Flemming v. Ronson Corp.*, 258 A.D.2d 759 (1971) likewise advanced the notion that a court must weigh the facts carefully, pursuant to a specific and detailed comparison of the proposed idea and the finished product, before making a novelty determination: "[S]imilarities between the submission of the ultimate product may justify the factual inference that one was copied from the other. If the concept submitted is unique, or if there are many points of likeness, the inference is strengthened. On the other hand, a lack of novelty or the existence of many dissimilar features will support a denial that the idea was used by the recipient." *Id.* at 157.

Here, the core feature of Plaintiff's idea – the cross-marketing of Addams Family characters and M & M's candy characters – was specifically adopted and used by Defendants. (Am. Comp., paras. 29-30) For this reason, along with those set forth above, the issue of the novelty of Plaintiff's idea should be determined by a jury. At minimum, Plaintiff is entitled to conduct discovery with respect to the multitude of novelty issues which need further scrutiny.

17

2.    **Defendants Cannot Establish, As a Matter of Law, That**
**Plaintiff's Disclosure to Defendants Was Not Made in Confidence.**

Plaintiff's Amended Complaint provides that at the time Plaintiff pitched

her idea to Defendants' employee, "a confidential or fiduciary relationship existed

between the parties, because the parties did not deal on equal terms, and, indeed,

Plaintiff trusted and relied on . . . Defendants . . . to protect her interests with

respect to her aforesaid marketing idea. Plaintiff, moreover, presented her idea to

Defendants in confidence." (Am. Comp., para. 24). Likewise, the Amended

Complaint states that at that time, Plaintiff was not represented by counsel or any

third party with respect to her idea, and Defendants thus owed Plaintiff fiduciary

duties, derived from the aforesaid fiduciary or confidential relationship, to act in

good faith to protect Plaintiff's interests. (Am. Comp., para. 25). Moreover, the

Amended Complaint, even contains an allegation that, prior to August, 2006,

Plaintiff had pitched a different marketing idea to Claire O'Donnell, a Senior

Media Buyer of Defendant MASTERFOODS. (Am. Comp., para. 16).

Nevertheless, Defendants argue, without any legal or factual support, that

this Court should discredit each of the aforesaid crystal clear allegations in its

entirety and determine, as a matter of law, that Plaintiff cannot establish that her

cross-marketing idea was presented to Defendants in confidence. Federal case law

18

provides otherwise.

Indeed, in _McGhan v. Ebersol_, 608 F. Supp. 277, 285 (SDNY 1985), in analyzing a misappropriation of ideas claim, this Court addressed whether a confidential or fiduciary relationship existed between the parties. This Court held that "a confidential or fiduciary relationship exists between parties where the parties do not deal on equal terms and one trusts and relies on the other." _Id._ at 285 (citations omitted). The _McGhan_ Court concluded that, because plaintiff was not represented by counsel during the period at issue, the circumstances and nature of the parties' business dealings "might support the conclusion that [plaintiff] relied upon [defendant] to protect his interests." _Id._  Accordingly, "a question of fact [was] presented as to the extent to which a fiduciary relationship existed." _Id._ (citations omitted). _See_ also, _In re Elsinore Shore Assocs._, 102 B.R. 958, 970 (Bktcy. D.N.J. 1989)(applying New Jersey law to misappropriation of ideas claim; "[u]nder _McGhan_, an idea is susceptible to a claim for misappropriation where the legal relationship between the parties is . . . a fiduciary relationship . . .")(citing, _McGhan_, 608 F. Supp. at 285).

An identical analysis is appropriate for the case at bar. As Plaintiff has carefully pleaded the requisite confidential and/or fiduciary relationship between the parties (Am. Comp., paras. 24-25, 16), Defendants cannot reasonably expect

the Court to resolve this entirely factual issue as a matter of law on a motion to

dismiss.  See *Trans World Technologies, Inc. v. Raytheon Co.*, 207 WL 3243941,

*6-7 (D.N.J. 2007)(plaintiff's misappropriation of an idea claim survived motion

to dismiss where, *inter alia*, complaint pleaded that plaintiff communicated certain

ideas *in confidence* to defendants with the expectation that it would be

compensated if defendants used his ideas); *Reiling Assocs. & Design Innovation,*

*Inc. v. Fisher-Price, Inc.*, 406 F. Supp.2d 175, 190-92 (D. Conn. 2005)(genuine

issue of material fact existed as to whether alleged misappropriated idea was

disclosed during the requisite confidential or fiduciary relationship, even though

plaintiff executed a Policy and Agreement disclaimer which expressly provided

that the disclosure was not made pursuant to a confidential relationship).

### 3.    Defendants Cannot Establish, As a Matter of Law, That Defendants Did Not Adopt and/or Use Plaintiff's Proposed Cross-Marketing Idea.

Defendants' self-serving argument that they never used Plaintiff's idea

(Defendants' Brief at p. 20) relies upon a narrow and erroneous definition of the

concept of "use."  In *Duffy*, indeed, the District Court of New Jersey engaged in a

detailed analysis of the type of conduct that would constitute a "use" sufficient to

impose liability under New Jersey's misappropriation law.  *Duffy*, 123 F. Supp. 2d

at 817. The _Duffy_ Court predicted that the New Jersey Supreme Court would look

to the _Restatement Third, Unfair Competition_ §40, cmt. c (explaining types of acts

constituting "use" of a trade secret). As with trade secrets, accordingly, "there are

no technical limitations on the nature of the conduct sufficient to constitute "use"

of a novel idea." _Duffy_, 123 F. Supp. 2d at 817.

Citing again the _Restatement_, the _Duffy_ Court set forth the proper

parameters for said "use":

> As a general idea, any exploitation of [a novel idea] that is likely to
> result in injury to the . . . owner or enrichment to the defendant is a
> 'use' . . . Thus, marketing goods that embody the novel idea in
> manufacturing or production, relying on the novel idea to assist or
> accelerate research or development, or soliciting customers through
> the use of information that is a novel idea all constitute "use"
> sufficient to impose liability.

_Id._ (citing, _Restatement Third, Unfair Competition_ §40, cmt. c; emphasis added).

Defendants, in marketing their M & M's candies in nationwide television

(and print) ads by using M & M's candy characters transmogrified into Addams

Family characters "used" the specific idea pitched by Plaintiff to Defendants.

(Am. Comp., paras. 29-30).

Where the issue is whether one's idea has in fact been used by another, the

analysis is fact specific. "[S]imilarities between the submission of the ultimate

product may justify the factual inference that one was copied from the other. If the

concept submitted is unique, or if there are many points of likeness, the inference

is strengthened.  On the other hand, a lack of novelty or the existence of many

dissimilar features will support a denial that the idea was used by the recipient."

*Duffy*, 123 F. Supp. 2d at 817 (quoting, *Flemming*, 258 A.2d at 157).

Accordingly, the issue of whether Defendants "used" Plaintiff's idea

requires amplification during discovery (i.e., an examination of the Addams

Family television and print ads used by Defendants juxtaposed with testimony

from Defendants' employee as to the specific components of Plaintiff's marketing

pitch) and may not properly be determined as a matter of law on Defendants'

motion to dismiss.  See *Trans World Technologies, Inc. v. Raytheon Co.*, 207 WL

3243941, *6-7 (D.N.J. 2007)(plaintiff's misappropriation of an idea claim

survived motion to dismiss where all three elements of the tort were pleaded,

despite absence of the word "novel" from the four corners of the complaint).

As the Amended Complaint pleads – at length – that Defendants "used"

Plaintiff's cross-marketing idea (Am. Compl., paras. 29-30, 34,46-47, 58-60),

Plaintiff has properly pleaded the third requisite element of misappropriation in

the submission-of-ideas  context.

\* \* \*

For the reasons set forth herein, Plaintiff respectfully prays for an order and judgment in which this Honorable Court shall:

(1)     Deny Defendants' motion to dismiss Plaintiff's claim[s] for unjust enrichment/misappropriation of an idea; and

(2)     Grant Plaintiff any other, different or further relief as to which this Court may seem just, proper or necessary.

Dated: June 20, 2008
      Orangeburg, New York       Respectfully submitted,

          KEVIN T. MULHEARN, P.C.

          By: Kevin T. Mulhearn, Esq. (KM 2301)
          *Attorneys for Plaintiff*
          60 Dutch Hill Road, Suite 8
          Orangeburg, New York 10962
          Phone: (845) 398-0361
          Fax:   (845) 398-3836
          Email: kmulhearn@ktmlaw.net

# CERTIFICATE OF SERVICE

I, Kevin T. Mulhearn, hereby certify that on the 21st day of June, 2008, I caused a true and correct copy of Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Amended Complaint, Pursuant to Fed. R. Civ. P. 12(b)(6), to be served electronically via the Court's ECF system on the following counsel:

Katherine Gates Lindsey      (klindsey@wc.com)
R. Hackney Wiegmann          (hwiegmann@wc.com)
Kenneth Jerome Brown         (kbrown@wc.com)


Williams & Connolly LLP

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202)434-50000 (phone)
(202)434-5029 (facsimile)

*Attorneys for Defendants*

/ S

—————————————————————
KEVIN T. MULHEARN (KM 2301)